THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. F. M. McKEE.

1. UNSUITABLE MACHINERY; *Injury of Employé; Liability.* It is the duty of a company engaged in manufacturing by machinery to provide its employés with machines and appliances suitable for the service required, and if it fails in that respect it is liable to its servants for injuries sustained by reason of unsuitable machinery.

2. SUPERINTENDENT — *Master, Not Fellow-Servant.* Where a company so engaged employs a person to inspect, repair and provide machinery for others to operate who are employed by the same company, he stands in the place of master to those who operate such machinery, rather than that of a fellow-servant.

3. UNSAFE MACHINE, *Operating, Not Negligence.* Where a person operating a machine complains to the superintendent of machinery that it is defective and unsafe, and such superintendent repairs it, and tells the operative he has done so, it is not negligence for such operative to continue at work at the machine, although it afterward appears that the repairs were not substantial.

4. REPAIR OF MACHINE; *Evidence of Defect.* Where repairs are made upon a machine shortly after an accident has occurred at the machine, evidence of such repairs is competent as tending to establish that it was not safe at the time of the accident.

5. MASTER'S DUTY *as to Machinery; Instruction, Not Material Error.* A master's duty is performed when he furnishes for his servants machines which are reasonably and adequately safe, and it is error for a court to instruct the jury that it is his duty to provide safe machinery; but when the correct rule is clearly and plainly stated in the same instruction and in almost the immediate connection, and it appears from the findings of fact that the machine inquired about was defective and out of repair, it is not such error as necessitates a reversal and retrial of the action, when it further appears that it was tried upon the theory that such machine was not perfectly safe.

*Error from Shawnee Superior Court.*

THIS cause was tried in the superior court of Shawnee county, in June, 1885. The defendant in error as plaintiff recovered a judgment for $2,000. He had been employed in the car-shops of the defendant, at Topeka, Kansas, and while sawing truss-rod blocks had his right hand cut off at the wrist. He complains in his petition of three distinct grounds of neg-

ligence on the part of the defendant: first, that the timber furnished him for sawing was shattered and riven; second, that the saw furnished him was cracked, with broken teeth, and unsafe; third, that the table or frame which held the saw was insecure, not holding the saw firmly, so that when it was used in sawing it would vibrate or wabble. It appears that while sawing a block, a wedge-shaped sliver or splinter was sawed off inside the block, and falling down beside the saw, wedged it; the block was thrown out, or "kicked," as it was termed in the evidence, and the wrist of his right arm fell upon the saw and was severed. The saw in question was claimed to be defective in this, that one tooth was out, and from the place where it was broken a crack in the blade of the saw extended about four inches; on the opposite part of the saw was another crack, extending about two or three inches, and there is some testimony of still another smaller crack in the saw-blade at another place. This saw was hung up on a post back of the table which held the saws used by the plaintiff. Each table was furnished with several saws, which could be taken off and put on when needed, and for this table six or eight were given to plaintiff. He had noticed that this saw was defective, and had put it upon a peg next to the post and hung other saws over it. The morning that this accident occurred he had been at work at his bench using another saw, for the purpose of sawing lighter material than truss-rod blocks. He had been called away on business to another part of the shop, and while absent some person went to his frame, took off the saw he had been using, and fixed the saw in question thereon. He, returning, noticed the pile of timber to be sawed into truss-rod blocks lying beside the frame, and seeing another and larger saw than the one he left on the table, lowered it, as he could by means of machinery, and proceeded to saw the block in question. He was injured in sawing the first block.

In regard to the table upon which this saw was placed, there was evidence introduced tending to establish these facts: It

38 — 37 KAS.

was of a pattern unlike any other frame or machine in the shops of the defendant, but one of the witnesses testified that he had seen such a one in car shops in the east. The mandrel that held the saw where it went into the arbor had worn a little, and had been loose before; the person who had used this machine before the plaintiff had allowed it to heat and become worn, and it had been repaired by putting in babbiting metal. The plaintiff had often complained of this table or frame, and the vibration or wabbling of the saw, and it had been fixed by Mr. Young, who was an assistant of a Mr. Cook, who was the man who looked after the machinery in the shops. On the Friday or Saturday prior to the Monday upon which this accident occurred, the plaintiff had complained to Mr. Young of the vibration of the saw, and Mr. Young on Saturday night tightened the screws and fixed the machine, as he told the plaintiff Monday morning before commencing work. The plaintiff did not notice the vibration of the saw when he first went to work Monday morning at the light stuff, but when he returned and commenced to saw the heavier material, he discovered it upon sawing the first half of the first block. After the accident this frame was continued in use, but after some time there was a wooden screw fixed to the side, and slats were added to the frame to make it firm.

The following are the questions submitted at the suggestion of the defendant, and answered by the jury:

"1. Was not the plaintiff injured by having his hand cut on a circular saw, which he was engaged in operating at the car shops of the defendant, in Topeka, on or about the 26th day of February, 1883? *Ans.:* Yes.

"2. Had not plaintiff been engaged in the operation of said machine for about two years to the day on which he was injured? A. About one year.

"3. At the time of the injury to plaintiff, were there not a number of saws hanging on a peg at said sawing machine, any of which the plaintiff could have used if he thought proper? A. Yes.

"4. Did not the plaintiff, at several times while he was working the said machine, complain to Mr. Young and ask that said machine be repaired? A. Yes.

"5. Did not Mr. Young, at each time that the plaintiff complained of said machine, go to the same and repair it by fixing the journals or tightening the bolts, or both? A. Yes, but not substantially.

"6. Did not the plaintiff, on Friday or Saturday before the accident, complain to Mr. Young of said machine and ask that it be repaired? A. Yes.

"7. Did not Mr. Young tell plaintiff that he would repair the machine before Monday? A. Yes.

"8. Did not Mr. Young, before Monday, February 26th, 1883, repair the machine on which plaintiff was working, by fixing the journals and bearings, and by tightening the bolts at the end of the frame in which the saw was set? A. Yes.

"9. Had not the kind of repairs which Mr. Young put on the machine just prior to the accident, been sufficient to remedy the vibrating and other defects previously complained of by plaintiff, at every time it was repaired by him prior to the last repairs before the accident? A. No.

"10. On Monday morning, February 26th, 1883, did not the plaintiff go to said machine and use the same until about 10 o'clock, sawing out material to be used in the manufacture of cars? A. Yes, on light material.

"11. After the plaintiff had completed the work which he was on the morning of the accident and the board had been carried away, did he not leave said machine for about thirty minutes and go into the yard? A. Yes.

"12. While plaintiff was absent from said machine for about thirty minutes, did not some one go to said machine and take off the saw which plaintiff had been using and put on a larger saw? A. Yes.

"13. When plaintiff returned to said machine after his temporary absence, did he, or did he not, know that some one had taken off the saw which he had been using and replaced the same with a larger saw? A. Yes.

"14. Did plaintiff before commencing work again on said machine stop the saw for the purpose of seeing what saw had been placed on said machine during his absence, and whether the same was in good or bad condition? A. No.

"15. Did the plaintiff, prior to commencing work with said machine after his temporary absence, examine the rest of the saws hanging on the peg to ascertain whether a defective saw had been placed on said machine or not? A. No.

"16. Did the plaintiff in working with said machine on said Monday morning notice any defect in said machine prior

to his temporary absence from the same and the changing of the saws thereon? A. No.

"17. Who put the saw, which injured the plaintiff, on the machine? A. Some one acting under general orders of defendant.

"18. About how many saws were there at the table at the time plaintiff was injured? A. From 6 to 10.

"19. Had plaintiff prior to the time of his injury been engaged in sawing the same kind of blocks which he was then commencing to saw? A. Yes, but not that day.

"20. Were any saws furnished said machine suitable for the class of work which plaintiff was engaged in at the time of his injury, other than the saw which he claims he was then using, and if so state how many? A. Yes, two.

"21. Had the plaintiff the right, in selecting the blocks which he was about to saw up, to discard and throw away those which he considered unsuitable for the purpose, or dangerous to use? A. He had the right to discard.

"22. Did plaintiff examine the piece of wood which he was engaged in sawing at the time of the accident, before commencing to saw the same? A. Yes.

"23. Had not plaintiff, just prior to the accident, passed the block of wood, which he was sawing at the time of the accident, twice through the machine, thus cutting off one side of the same? A. Yes.

"24. When did plaintiff first notice on Monday that the machine was defective, or not working properly, if at all? A. On sawing first block.

"25. Did the plaintiff, at any time on Monday, February 26th, complain of the condition of said machine, and if so, to whom did he make said complaint on said day? A. No.

"26. Had not the plaintiff the right to refuse to work with, and to discard and lay aside, any one of the saws furnished to his table whenever he considered them unsuitable or unsafe to be used on the work which he was engaged at? A. Yes.

"27. What was the condition of the saw which plaintiff was using at the time he was hurt; please describe the same fully? A. A saw from 14 to 16 inches in diameter, one tooth out, and two or more cracks.

"28. Did the condition of the saw which plaintiff was using at the time of the accident contribute in any manner to his injury? A. It might, or it might not.

"29. If you answer the last question in the affirmative, please state fully how it so contributed. A. ——.

"30. Would the plaintiff have used the saw which was on the machine at the time he was hurt if he had known that that saw was on? A. No.

"31. Did not the saw at the time of the accident in cutting through the piece of wood cut off and loosen next to the top of the table a wedged-shaped sliver from a season-crack in said wood? A. Yes.

"32. Did said wedged-shaped piece of wood, cut off from said piece of wood which plaintiff was sawing, in any manner contribute to the injury of said plaintiff? A. Yes.

"33. If you answer the last question in the affirmative, please state fully how it so contributed to said injury. A. By throwing block out and allowing his hand to fall on saw.

"34. Would not the sawing off of a wedge-shaped sliver from a block of wood similar to the one which was sawed off at the time of plaintiff's injury probably throw said block from the saw by driving said wedge-shaped sliver between the saw and the block, even if the saw was in perfect condition, or new? A. Probably it would.

"35. Is not the operation of circular saws and the kind of work in which plaintiff was employed at the time of the accident common to a great variety of wood-working shops or establishments other than those connected with railroad corporations? A. Yes.

"36. Did any portion of the duties of plaintiff in the employment in which he was engaged require him to perform labor upon or in connection with moving trains, cars or locomotives over the line of defendant's railroad? A. No.

"37. Did the duties of plaintiff's calling and occupation, at the time he was injured, in any manner expose him to the hazards peculiar to the operation of a railroad, or different from the hazards which he would have been exposed to had he been engaged in operating the same kind of machinery in building cars for a private manufacturing company, or car manufacturing company, other than a railroad? A. No.

"38. If you answer the last question in the affirmative, please state fully what hazards plaintiff was exposed to peculiar to railroading which he would not have been exposed to engaged in operating the same class of machinery in a car factory owned by an individual or car company? A. ——.

"39. At the time plaintiff complained to Mr. Young, on the Friday or Saturday preceding the accident, as to the condition of said sawing-table at which plaintiff was hurt, did not Mr. Young go to said table before the Monday on which

plaintiff was hurt and make thereon all the repairs which he deemed necessary, and the same kind of repairs which upon previous complaints he had made, and which at previous times had remedied the defects complained of ?   A. Yes, but did not remedy all defects.

"40. Was not Mr. Young a competent and experienced machinist ?   A. Yes.

"41. How long had Mr. Young been employed in the business of operating and repairing and working with wood machinery?   A. About 20 years.

"42. At the time of plaintiff's injury did he not attempt to pass the stick which he was sawing through with his hands, without using a forked stick to push the same through with ? A. Yes.

"43. Was there not a forked stick at said table, at the time of the accident, which the plaintiff could have used to push said stick of wood through, and which was made and kept there for that purpose?   A. Yes.

"44. Was it not the duty of the plaintiff to refuse to work with and to lay aside any saw, among the number furnished to said machine which he considered dangerous?   A. Yes.

"45. How much per day was plaintiff earning at the time he was injured?   $2\frac{15}{100}$.

"46. Did not the plaintiff, after he recovered from the effects of his injury so as to be able to work, go back to the defendant's shops and work for the defendant, and continue to work there until a few days before the commencement of this suit, nearly two years after said accident?   A. Yes.

"47. Did not plaintiff quit the service of the company immediately before the commencement of this suit, voluntarily ? A. Yes.

"48. What wages was plaintiff earning at the time he voluntarily quit the service of the defendant company, just before commencing this suit?   A.   $2\frac{15}{100}$.

"49. Did not the plaintiff, at the time of the accident complained of and long prior thereto, have knowledge of the form or pattern or plan of construction of the table on which he was engaged to work?   A. Yes.

"50. Could not the plaintiff, by the reasonable exercise of his faculties, during the period of about two years that he worked with the table at which he was injured, have known of the pattern or plan on which the same was constructed ? A. Yes, but he only worked on table about one year.

"51. Was there a wood screw placed upon said table, at the

end of the swinging frame supporting the saw, after the accident to plaintiff? A. Yes.

"52. If you answer the last question in the affirmative, state about how long after said accident said wood screw was placed upon said table. A. From one to three months.

"53. Was the placing of said wood screw upon said table a repair of the table, or was it the addition of a new invention or device? A. Repair.

"54. Had the plaintiff ever thought or suggested the addition of a wood screw at the end of the swinging frame supporting the saw, for the purpose of steadying the saw and lessening its vibration, and if so, state when and to whom he suggested it? A. No.

"55. At whose suggestion was the wood screw placed on the end of the swinging frame supporting the saw? A. Jas. L. Wilcox.

"56. Did the plaintiff at any time demand that he be furnished with a new table to operate the saw on which he was injured, or that he be furnished with a table constructed on a different pattern from the one which he was working on? A. No.

"57. If you answer the last question in the affirmative, state when he made such demand, and to whom he made the same. A. ———."

The defendant *Railroad Company* brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Vance & Campbell,* and *Waters & Chase,* for defendant in error.

Opinion by HOLT, C.: The defendant makes a number of assignments of error, and they are all properly raised by the demurrer to the plaintiff's evidence, and objections to the instructions given; by exceptions to the instructions asked and refused, and by motion for judgment on the findings for defendant, and motion for a new trial. Before we proceed to examine them in detail, we will state that the first ground of negligence alleged by plaintiff has no support whatever under the evidence introduced. It appears that the "odds and ends" of the timber cut at other saws in the shop were brought to

plaintiff's form or bench, and that he was to pick out there-
from such pieces as he thought could be worked to advantage.
It was his duty to select such pieces as he thought fit, and re-
ject those pieces that he thought unfit for use.    This duty was
given to him alone.    He testified, and it is undisputed, that
he examined the block, and supposed it to be suitable for use
in making truss-rod blocks, and that the splinter or sliver that
became dislodged from the block in sawing could not have
been seen by an examination of the block.    Certainly under
this statement of facts there was no negligence of the com-
pany nor of the plaintiff.    The findings were in keeping with
the evidence.

The second ground of negligence—that the saw was defect-
ive—is partially supported by the testimony, but it is fairly
established by the evidence that such defect did not contribute
to the injury of the plaintiff.    In this connection we call at-
tention to the following:

"28.  Did the condition of the saw which plaintiff was using
at the time of the accident contribute in any manner to his
injury ?  *Ans.:*  It might, or it might not.

"29.  If you answer the last question in the affirmative,
please state fully how it so contributed.    A. ——."

"34.  Would not the sawing off of a wedge-shaped sliver
from a block of wood similar to the one which was sawed off
at the time of plaintiff's injury probably throw said block from
the saw by driving said wedge-shaped sliver between the saw
and the block, even if the saw was in perfect condition, or
new ?   A.  Probably it would."

Under the evidence and answers to the questions and the
failure to answer, we are safe to say, for the purposes of this
case, that the alleged negligence of the defendant in regard to
this saw did not contribute to the injuries of the plaintiff.
This leaves us now to examine the third ground of negligence;
that is, the defects in the machine or table in which the saw
was placed.    The defendant urges with great force that the
railroad law of 1874, relating to damages to employés of the
railroad company, caused by the negligence of coemployés, is
not applicable in this case.    The defendant claims that the

rule applies only to the hazardous work of railroading; that it does not apply to that part of the defendant's work which was carried on in its car shops; claiming further, that the fourteenth amendment to the constitution of the United States forbids any distinction as to liability in the same kind of employment; that there should be no greater liability on the part of a railroad company for injuries to an employé, caused by the negligence of its coëmployés while manufacturing cars, than there should be in the same business if it was carried on by a company not engaged in railroading, and cites: *C. R. I. & P. Rly. Co. v. Deppe*, 36 Iowa, 52; *Santa Clara Co. v. Southern Pac. Rly. Co.*, 118 U. S. 394; *Phila. Fire Association v. New York*, 119 id. 120. We think it is unnecessary to discuss this matter, under the evidence in this case. If there is any negligence shown in this case upon which the plaintiff may recover, it is about the form or machine in which the saw was placed that cut off the hand of plaintiff. It

1. Unsuitable machinery; injury of employé; liability.

was the duty of the defendant to provide its employés with machinery and appliances for the service required, suitable for its efficient and reasonably safe performance, and if it failed in that respect, it was liable to its servants as it would be to a stranger. This defendant had assigned to Mr. Cook and his assistant, Mr. Young, the duty of inspecting the machinery and providing

2. Superintendent — master, not fellow-servant.

new when necessary, and seeing to it that such machinery was kept in a suitable condition. While so engaged about furnishing and repairing the tools and machines in the car shop, we believe they were standing in the place of principal to this plaintiff, rather than his fellow-servants. (*St. L. & S. F. Rly. Co. v. Weaver*, 35 Kas. 412; *A. T. & S. F. Rld. Co. v. Moore*, 29 id. 632; *K. P. Rly. Co. v. Little*, 19 id. 267; *C. & M. Rld. Co. v. Ross*, 112 U. S. 377; *Brabbits v. C. & N. W. Rly. Co.*, 38 Wis. 289.) As shown by the testimony, Mr. Young had known of the defects of this machine or table for some time, and had repeatedly repaired or fixed it. The plaintiff had complained of the defects only a day or two before the accident occurred, and Mr. Young

had attempted to repair it, but had not done so substantially, as is shown by the findings of the jury. It is however claimed by defendant, that the plaintiff knew as much about this machine as the defendant, especially as Mr. Young, the agent of the defendant, and that because he kept on at work at the machine after he knew of such defects, he was guilty of contributory negligence, and therefore could not recover. We think that the testimony does not support this contention. Mr. Young promised the plaintiff Saturday night that he would repair this machine; he did repair it partially, and told plaintiff Monday morning that it was repaired and all right. Plaintiff had the right to rely upon the statement of Mr. Young, and to proceed with his work under such statement. It did work all right with a small saw in light timber at first, Monday morning, under plaintiff's hands. The first notice that plaintiff had of its vibrations or wabbling Monday morning, was when he commenced sawing the block upon which his hand was injured. Some party whom the evidence fails to disclose, went to the machine and did some sawing in the plaintiff's absence. Whether during the sawing by this unknown party the mandrel became loosened or the machine unsteady, we can only surmise; when plaintiff left it it seemed to be steady and firm, and as soon as he returned and commenced to saw with it it vibrated. But this conclusion can be safely drawn from all the testimony, and the findings of fact of the jury, that the repairs made by Mr. Young on Saturday night were either not thorough or substantial, or the machine was in such a condition that if the tightening of the screws had been thoroughly done, such repairs did not materially remedy the defects complained of by plaintiff.

It further appears in evidence that some time after the plaintiff had left the shop, something was attached or affixed to the machine to make it steady. It is in evidence that Mr. Wilcox, who took the machine or table some time after plaintiff was injured, complained that the saw "sawed all over the timber," and these additions or repairs, as the jury found,

3. Unsafe machinery; evidence of defect.

were made at the suggestion of Mr. Wilcox. The defendant claims that the admission of such testimony was error, and in this connection complains of the instructions given by the court in reference to such repairs. We will here state that if the evidence was properly admitted, the form of an instruction given by the court covering this testimony was certainly correct. We shall not here discuss the question of whether evidence showing that repairs have been made upon a machine at which an accident has happened, shortly after it occurred, is competent to show that such machine was unsafe at the time of the accident. This court has examined and discussed this matter, and it appears to be the settled law of the state to admit such evidence.

4. Repair of machine; evidence of defect.

(*A. T. & S. F. Rld. Co. v. Retford,* 18 Kas. 245; *City of Emporia v. Schmidling,* 33 id. 485; *St. L. & S. F. Rly. Co. v. Weaver,* 35 id. 412; *City of Abilene v. Hendricks,* 36 id. 196.) We therefore believe the testimony was admissible to establish the fact of the defect in the machine at the time of the injury.

The further question now arises, and one of considerable difficulty in determining, whether this defective machine was the cause of the injury to the plaintiff. We call attention to the findings, and to the general verdict for the plaintiff. It will be remembered that all these special findings were submitted at the request of the defendant, and none of them are in conflict with the general verdict, and many of them tend to sustain and uphold it; and further, whether this injury of the plaintiff was an accident, or the result of the defective condition of defendant's machine, was submitted to the jury; by their verdict we may safely infer that they found it was caused by the negligence of the defendant, rather than by an accident. There is testimony to sustain the verdict, and we do not feel at liberty to disturb it. From the evidence, we believe the jury were authorized to find that this injury was the result of the negligence of the defendant in failing to furnish a proper machine for plaintiff to work upon.

The defendant also complains of a part of the court's instruction number five, which reads as follows:

"  .  .  . And it is the master's or employer's duty to maintain such supervision and care respecting all tools, machinery and appliances used by his servants or employés as may be necessary to continue them in safe condition for use; and if he fails to do so he is liable for injuries arising from his neglect."

It contends that the word "safe" in the instruction should have been qualified by "reasonably," or some word or phrase showing that it was defendant's duty to have its tools and machinery in an adequately safe condition, and says that when the word "safe" was used in the connection it is in this instruction, without any limitation or qualification, it would make the defendant an absolute guarantor of the safety of its machinery. It is admitted that the rule is correctly laid down in other parts of the instructions of the court, and in passing we wish to say that it is very fully, plainly and clearly stated, with the exception of this one portion of the instruction. The proper qualifying word was evidently inadvertently omitted by the court. The sentence immediately preceding this instruction is:

"  .  .  . And the master or employer must exercise reasonable and proper vigilance to see that the machinery employed is in proper condition for the purposes for which it is being used; and it is the master's and employer's duty," etc., etc.

And in the seventh instruction:

"You are to determine from the evidence the facts respecting the condition of the saw and table and appliances constituting the machine at which the plaintiff was engaged when hurt, whether the same or either was in good condition and reasonably safe, or whether either was out of repair, defective, or dangerous."

The defendant contends, however, and with reason, that where the law is given properly in an instruction, and in another place improperly, it may fairly be presumed that the jury were misled by that portion of the instruction which er-

roneously stated the law. While such is the rule, yet we would hesitate to carry it to the extent to apply it to the instructions of the court, when the instructions requested by the parties are all refused, and the charge to the jury is given as a whole, connectedly, and almost in the immediate connection and within the same subdivision of the instruction the court lays down the rule plainly and correctly. The duty of the defendant is so plainly given elsewhere that we should hesitate to decide the omission of the qualifying word in this instance would be error sufficient to require a reversal and a retrial of the case.

5. Master's duty as to machinery; instruction, not material error.

In this action, under the findings, such instruction could not have materially prejudiced the defendant, as the jury found this machine defective and out of repair. This action was evidently not tried on the theory that this machine was safe and perfect. Finding number sixteen, submitted at the request of defendant, asks whether the plaintiff noticed any defect in the machine prior to the time of his temporary absence from the same; and immediately following, " When did plaintiff first notice on Monday that the machine was defective, or not working properly, if at all ?" The main contention in this case is not whether the machine was safe, but, being defective, whether the plaintiff was guilty of contributory negligence in using it, and especially whether its defects caused the injuries plaintiff sustained. It is reasonable to infer from the testimony and findings that the machine was defective, out of repair, and unsafe.

The defendant asked, and the court refused to instruct the jury, that—

" Where the danger of using defective machinery is so great that a man of ordinary prudence would not continue to use it, if a servant continues to use such machinery, or instrument, even after an express promise of the master, he would still be guilty of contributory negligence, and could not recover."

This instruction could not apply to the defective machine or form which held the saw. Plaintiff did not continue to use the same because of any promise of the master to repair

it, but did go to work at it upon the day of the accident, because he was told that it had been repaired since he last used it. He then had a right to assume that all repairs necessary to remedy the defects complained of had been made. We believe no material error was committed in the trial of this action, and therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.