## GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY *v.* CARTLEDGE.

1. That, after an occurrence resulting in injury to one person, another who is sought to be held accountable therefor took additional precautions to prevent others from being likewise injured, can neither justly nor logically be regarded as an admission on his part that he was negligent in not sooner observing such precautions. Prior decisions by this court, virtually to the contrary, reviewed and overruled.

2. It affirmatively appearing from the evidence in the present case that the proximate cause of the plaintiff's injury was his own independent act, for which there was no necessity and which was in no way brought about by any default on the part of the defendant company, he was not entitled to recover.

Argued July 1, — Decided August 7, 1902.

Case. Before Judge Nottingham. City court of Macon. October 17, 1901.

*Hall & Wimberly* and *R. C. Jordan*, for plaintiff in error.
*Guerry & Hall* and *M. Felton Hatcher*, contra.

LUMPKIN, P. J.   This was a suit for damages against the Railway Company by Cartledge, who set forth in his petition the following allegations of fact: "On the 30th day of June, 1900, he was in the employment of the United States Government in the railway mail service, and was, in the course of his employment, on said day riding upon the train and in a car of the said company."

On that day, " while on the railroad train of said railroad company in the discharge of his duties as mail clerk on said car furnished by said road, . . the mail grab, which was fastened on the outside of said car, came in contact with a post standing upon the platform of said railway company at the station house at Sofkee." The result was that the " mail grab was turned from its fastenings to the side of said car and thrown down and upon the left hand of petitioner, who was at that time inside the car, where he had the right and where it was his duty to be, and where he then was in the exercise of all the care encumbent upon him. . . Petitioner's hand was terribly mutilated, wounded, and crushed, the bone in the first finger of said hand being broken [and] made permanently useless." The injury thus sustained by him " was caused by the negligence of said railroad company in erecting the said post too near the track of said railroad company and allowing it to remain there." A recovery was had by the plaintiff, and the company is here complaining of a judgment denying it a new trial.

1. At the time of the plaintiff's injury, the post above referred to " stood thirteen or fourteen inches from the side of the passing coach. The plaintiff was permitted to testify, over the objection of the defendant, that this post had been moved further back since the accident," the objection urged against the admission of this testimony being that it was not " competent evidence for the purpose of showing negligence on the part of the defendant." Tested by rulings heretofore made by this court, this testimony was clearly admissible. In *Augusta R. Co.* v. *Renz*, 55 *Ga.* 126, it was held that : " Upon the trial of a suit against a street-railroad company for an injury sustained by careless driving over a sharp curve and sudden elevation, it was competent to show that the defendant had altered the curve since the accident." A similar ruling was announced in *Central Railroad* v. *Gleason*, 69 *Ga.* 201. In *Savannah Ry. Co.* v. *Flannagan*, 82 *Ga.* 580, the question arose whether or not it was competent for the plaintiff to prove that after the homicide of her husband, who was run over and killed by an engine belonging to the defendant, " the engines of the company were run more slowly along the street which was the scene of the accident." Commenting upon the relevancy of evidence which had been introduced to establish that such was the fact, Chief Justice Bleckley, who delivered the opinion of the court, said (p. 589) :

"There is much authority to the contrary, . . but we think consistency with our own decisions requires us to hold that it was admissible." Doubtless influenced by the intimation thus thrown out that the question presented, were it an open one, would admit of some doubt, counsel for the plaintiff in error in the present case asked and were granted leave to review these decisions. We have accordingly given them careful consideration, with the result that we are constrained to announce, after mature deliberation, that our faith in their correctness, which in the past had already been much shaken, has succumbed to the conviction that they can not be defended either upon principle or by the weight of authority. We find, upon investigation, that they are not in accord with the rule which obtains in England. See Hart *v.* Railway Co., 21 L. T. Rep. N. S. 261. Nor are they in harmony with the consensus of judicial opinion which prevails in this country. See Columbia R. Co. *v.* Hawthorne, 144 U. S. 202, and cases cited on page 207; Railroad Co. *v.* Parker, 55 Fed. 595; Barber Paving Co. *v.* Odasz, 60 Fed. 71; Motey *v.* Pickle Marble Co., 74 Fed. 156; Southern Pacific Co. *v.* Hall, 100 Fed. 761; L. & N. R. Co. *v.* Malone, 109 Ala. 510; Sappenfield *v.* Railroad Co., 91 Cal. 49; Hager *v.* Southern Pacific Co., 98 Cal. 309; Limberg *v.* Glenwood Lumber Co., 127 Cal. 598; Nally *v.* Hartford Carpet Co., 51 Conn. 524; Harvey *v.* Mining Co. (Idaho), 31 Pac. Rep. 819; Holt *v.* Railway Co. (Idaho), 35 Pac. Rep. 39; Giffen *v.* Lewiston (Idaho), 55 Pac. Rep. 545; City of Bloomington *v.* Legg, 151 Ill. 10; Howe *v.* Medaris, 183 Ill. 288; Terre Haute R. Co. *v.* Clem, 123 Ind. 16; Board of Com. *v.* Pearson, 129 Ind. 456; Railroad Co. *v.* Lee, 17 Ind. App. 216; Cramer *v.* Burlington, 45 Iowa, 627; Hudson *v.* Railroad Co., 59 Iowa, 581; Beard *v.* Guild, 107 Iowa, 476; Standard Oil Co. *v.* Tierney, 92 Ky. 368; Downey *v.* Sawyer, 157 Mass. 418; Dacey *v.* Railroad Co., 168 Mass. 479; Turnpike Co. *v.* Case, 80 Md. 36; Thompson *v.* Railway Co., 91 Mich. 256; Hammargren *v.* St. Paul, 67 Minn. 6; Ely *v.* Railway Co., 77 Mo. 34; Hipsley *v.* Railroad Co., 88 Mo. 348; Alcorn *v.* Railroad Co., 108 Mo. 81; Corcoran *v.* Peekskill, 108 N. Y. 151; Getty *v.* Hamlin, 127 N. Y. 636; Clapper *v.* Waterford, 131 N. Y. 382, 390; Lowe *v.* Elliott, 109 N. C. 581; Skottowe *v.* Railway Co., 22 Ore. 430; Farley *v.* Charleston Basket Co., 51 S. C. 222, 241; Railroad *v.* Wyatt, 104 Tenn. 432; Railway Co. *v.* McGowan, 73 Tex. 356; Railway

Co. v. Hennessey, 75 Tex. 155; Fordyce v. Chancey, 2 Tex. Civ. App. 24; Bell v. Shingle Co., 8 Wash. 27; Carter v. Seattle, 21 Wash. 585; Anderson v. Railway Co., 87 Wis. 195; Jennings v. Albion, 90 Wis. 22; Green v. Ashland Water Co., 101 Wis. 259. See, also, authorities cited and commented on in note appended to the case of Railway Co. v. Weaver, 57 Am. R. 183—187.

In the New York Reports instances are to be found where some of the tribunals of that State at one time strayed from the path which all good courts should travel; but the true doctrine was expounded by its Court of Appeals in the case of Baird v. Daly, 68 N. Y. 547, and has since been consistently observed. More recently there have been other converts to the new faith which we now feel called upon to embrace. Notable among these is the Supreme Court of Minnesota, it having in the case of Morse v. Railway Co., 30 Minn. 465, formally reviewed all of its prior decisions bearing on the point under consideration and pronounced them unsound, saying of the rule which had been laid down : " We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence." We may also point to the fate which befell an early Colorado case, Railway Co. v. Miller, 2 Colo. 442, the ruling in which is no longer given recognition by the courts of that State. Electric Co. v. Lubbers, 11 Colo. 505 ; Railroad Co. v. Morton, 3 Colo. App. 155. The Supreme Court of New Hampshire has also reversed its position on the question. See Aldrich v. Railroad, 67 N. H. 250, in which that court overruled a prior decision in the case of Martin v. Towle, 59 N. H. 31, to the effect that it was competent for the plaintiff to prove that after he was injured by the overturning of a carriage belonging to the defendant, the latter discharged the driver thereof.

So far as we have been able to ascertain, the courts of but two States still adhere to the view that one who is sought to be held accountable for an injury sustained by another can not take additional precautions to prevent others from being likewise injured, without thereby tacitly admitting that such precautions should sooner have been adopted. Railroad Co. v. McKee, 37 Kans. 592; Consolidated Smelting Co. v. Tinchert, 5 Kans. App. 130; McKee v. Bidwell, 74 Pa. St. 218 ; Lederman v. Railroad, 165 Pa. St. 118. Speaking for the Supreme Court of Kansas, Mr. Justice Valentine,

in the case of Railway Co. *v.* Weaver, 35 Kans. 412, undertook to defend the rule laid down in prior decisions therein cited; but the argument he advanced in its support impresses us as being far from convincing. Pennsylvania's pioneer case on this line is that of Railroad Co. *v.* Henderson, 1 P. F. S. 315, wherein the correctness of the ruling announced was assumed without any discussion whatever. It was subsequently held in Railroad Co. *v.* McElwee, 17 P. F. S. 311, that: " In an action for death by negligence, from cars striking a cart on scales near to a railroad track, evidence was proper that after the accident the track was removed to a greater distance." With Quaker directness and simplicity, the question as to the admissibility of such evidence was dismissed with the remark (pp. 314 – 15): " If the proximity of the track to the buildings did not increase the danger, why was it moved ?" Doubtless it was moved in order to insure greater safety in the future — an act in and of itself perfectly legitimate, and prompted by a motive which was highly commendable. It may not be extravagant to say this action on the part of the company was something more than commendable, if at the time it had reason to apprehend that the ruling just referred to might be made. No one situated as was this company should be placed " in the embarrassing attitude of being compelled to choose between the risk of another accident, by maintaining the status quo," and the equally uninviting alternative of taking proper steps to remove the danger and thereby " making evidence against himself which would act prejudicially to his defense in the minds of the jury." Railroad *v.* Wyatt, 104 Tenn. 434. "The effect of declaring such evidence competent is to inform a defendant that if he makes changes or repairs, he does it under penalty; for, if the evidence is competent, it operates as a confession that he was guilty of a prior wrong. . . True policy and sound reason require that men should be encouraged to improve, or repair, and not be deterred from it by the fear that if they do so their acts will be construed into an admission that they had been wrong-doers. A rule which so operates as to deter men from profiting from experience and availing themselves of new information has nothing to commend it, for it is neither expedient nor just." Railroad Co. *v.* Clem, 123 Ind. 18 – 19. To the same effect, see the admirable opinion delivered by Mitchell, J., in Morse's case (30 Minn. 468), and the irresistible argument on the same line presented by Watts,

J., in Railway Co. *v.* Burns (4 Tex. Law Rev. 54, 56), and quoted approvingly in McGowan's case, cited supra.　We do not hope to conceal the fact that, in thus concentrating our attack upon the decisions pronounced by the Kansas and Pennsylvania courts, instead of bringing prominently into view and assailing the prior decisions of this, our own court, we have yielded to an ordinary impulse of human nature.　We do, however, distinctly announce that those decisions are now overruled.

2. The only evidence introduced on the trial of the present case was the testimony of the plaintiff himself.　He gave a clear and straightforward account of how he met with his injury, which was, in brief, as follows:　He was attempting to pass "some mail under the grab" to the assistant postmaster at Sofkee, who "came out of his office just as the train was moving from the station, and the mail-grab came in contact with a post that stood very close to the side of the car. . . The grab was wrenched from the side of the car," and plaintiff's left hand was caught by it and mashed against the car.　The hand which was injured "was resting on top of the mail catcher."　He held the mail in his "right hand, and stooped down to hand it under the catcher to the assistant postmaster, and the catcher came in contact with the post."　A mail-grab is made of iron and "fits in a fastening on the side of the mail-car, across the door, and works loose."　It consists of a horizontal bar extending across the doorway and a "grab" or "catch-bar," operated by means of a handle from the inside of the car, which, when the contrivance is used in collecting mail at stations where the train does not stop, "pokes out and catches the mail-bag as it hangs" on a crane erected near the track.　It was the custom of the plaintiff to "deliver mail at Sofkee on the 'shoo-fly' trains by hand, and not with a sack."　The assistant postmaster, who was also the agent of the railway company, had "to receive the mail at the car door."　Plaintiff "had no right to leave [his] car and go and deliver the mail," his duty requiring him to be "at all times" in his car.　"The reason [he] did not deliver the mail before the train started to pulling off was, that the agent was inside of his office," and did not come to receive the mail till the train began to move.　The post above mentioned was a semaphore-post, and not a mail-post.　"There was no mail-crane at that point.　The grab is used for the purpose of taking the mail-bag from the crane,

and for no other purpose." The assistant postmaster "was standing five or six feet [from] the semaphore-post when" the plaintiff "handed him the mail." Plaintiff rested his left hand "on the catcher, and handed the mail under the catcher with" his right hand; "was in a stooping position." He "had to stoop," and he rested his "hand on this grab as a support and handed the mail underneath it, and in that condition this grab came in contact with the semaphore-post." He "had to push this grab out thirteen or fourteen inches from the car in order for it to strike the post. It could not have possibly come in contact with the post unless it was pushed out, the post being off thirteen or fourteen inches. It would not have caught the post unless" the plaintiff had his "hand on it, and unless [he] pushed it out, either accidentally or purposely." He "had seen the semaphore-post frequently," but had "never taken any particular notice of how close it was" to the track, and "didn't know how close it was." The plaintiff "had two newspapers to deliver" to the assistant postmaster at Sofkee; "could not have thrown them out, because they were not marked to 'throw out.'"

In view of this evidence, it may be conceded, not only that the railway company was negligent as alleged, but that the plaintiff, though he had frequently seen the post, was not himself guilty of any negligence in not taking note of its dangerous proximity to the track and governing his actions accordingly. At the same time, however, he could not possibly have been injured had he not, "either accidentally or purposely," pushed the "catch-bar" out some thirteen or fourteen inches from the side of the car, when there was no necessity to do so, nor, indeed, any occasion for him to make any use whatever of the contrivance known as the "grab." This being so, his own independent act, whereby the accident was brought about, is to be regarded as the proximate cause of his injury, and the company can not be held accountable therefor. See *Hardwick* v. *Georgia Railroad Co.*, 85 *Ga.* 507; *Lindsay* v. *Southern Ry. Co.*, 114 *Ga.* 896; R. & D. R. Co. *v. Scott*, 88 Va. 958, 52 Am. & Eng. R. Cas. 405 (note); Baltimore Ry. Co. *v. Sims* (Ind.), 63 N. E. Rep. 485.

It follows that the trial judge erred in leaving to the jury the question of the company's liability, and in refusing to instruct them, at the instance of its counsel, to the effect that if they be-

lieved the injury to the plaintiff could not have occurred "but for his own conduct in pushing out the mail-grab, whether intentional or by accident," he would not be entitled to recover.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*