CENTRAL OF GEORGIA RAILWAY CO. *v.* PRICE.

121  651
s124  899
s124  900

1. It is reasonably to be expected of a railway employee, who is engaged in the performance of duties in and around one of the freight yards of his master, that he shall avail himself of his opportunities to familiarize himself with his surroundings and note the location of a culvert passing under an embankment along which tracks are laid, to the end that he may guard against the obvious danger of falling into the culvert in the event his duties call him in the night-time to the point where it is situated; and if he be injured by falling into the same, he can not be heard to say that though he knew of its existence, and notwithstanding he had previously had full opportunity to acquaint himself with its relative location, he did not in point of fact know exactly where it was, and that his master should have warned him of the

danger of falling into it before sending him at night to attend to his duties on and around an engine which had been left directly over the culvert.

2. The charge of the court touching the right of the plaintiff to recover was not adjusted to the law and facts of the case on trial, and unjustly deprived the defendant company of one of its main defenses ; irrelevant and prejudicial evidence was admitted over its objection ; and these and other errors committed should have persuaded the trial judge to grant a new trial, irrespective of the question whether the evidence sufficiently supported the finding of the jury.

Argued October 24, 1904.— Decided January 27, 1905.

Action for damages.     Before Judge Hodges.     City court of Macon.     July 11, 1904.

*Hall & Wimberly* and *J. E. Hall,* for plaintiff in error, cited Civil Code, § 2612; *Ga. R.* 92/495; 89/835; 112/762; 96/481; 108/796; 118/289.

*J. H. Hall* and *Glawson & Fowler,* contra, cited *Ga. R.* 120/1030 ; 118/581 ; 116/698 ; 111/464 ; 103/658, 822 ; 90/661 ; 88/600 ; 87/6 ; 80/521 ; 72/218 ; 71/406 ; 66/709 ; 128 U. S. 95 (32 L. ed. 340); 85 Am. D. 729: 59 Mo. 495 (21 Am. R. 385); 24 Fed. 908 ; 109 Pa. St. 129 ; 29 Iowa, 14, 17 ; 17 L. R. A. 602 ; 8 Ib. 783 ; 48 Ib. 763 ; 105 Ind. 29 (55 Am. R. 169, 4 N. E. 172); 18 Am. R. 414 ; 90 Ind. 205 (40 Am. R. 205) ; 100 Ind. 181 ; 55 Am. R. 173 ; 47 Ib. 319.

EVANS, J.   This was an action for damages, brought by Price against the Central of Georgia Railway Company, he having sustained personal injuries while in its employ as a locomotive fireman.   The case made by his petition was, in brief, as follows: About half past twelve, one night, he was called on by the defendant company to go out on an engine about to leave the city of Macon, and went to the place in the company's yard where his engine had been stationed by other employees whose duty it was to bring the engine from the round-house.   The steam was on, and the engine was fully prepared to go out on what was known as the Southwestern division of the company's road.   He undertook, as it was his duty to do, to make an examination of the engine for the purpose of seeing that certain parts of it were in good order, and while in the discharge of this duty he stepped into an opening or hole on the premises of the company, very near the track on which the engine was standing, and received the injuries complained of.   He had no reason whatever to apprehend

that this opening or hole existed, and before he fell into the same did not see it and could not, by the use of ordinary care on his part, have discovered the same.  He was at the time in the full discharge of his duty at the place where the company required him to be, and was himself entirely free from fault.  He had "no knowledge or notice of the existence of said hole or opening at that place."  It was an opening in a culvert or water-way that passed under the tracks of the company at that place, and its presence was absolutely unknown to him up to that time, and he had no means of discovering it before he fell into the same.  The hole was on one side of the engine, right at the point where the cow-catcher stood, and in passing around the cow-catcher for the purpose of examining the engine, he stepped into the hole, it being impossible for him, under the conditions existing at the time, to have discovered its presence in time to prevent the injury.  He fell a distance of some fifteen feet into a culvert or sewer, and as a result of the fall both bones of his left leg, just above the ankle, were broken and badly splintered.  The plaintiff charged that the employees of the company were negligent in unnecessarily placing the engine so near the opening in the top of the sewer and in failing to give him notice of the presence of this opening; that the company was negligent in sending him, without warning, to an unsafe place in which to perform his duties, when it had every means of discovering the dangerous locality and he did not have equal means of discovering the same before he was injured; that the defendant was negligent in permitting or causing the opening to be made on its premises and in not taking any means to give petitioner or any other employee notice of the existence of this dangerous place on its premises, where he was required to go in the performance of his work; and that the company was also negligent in failing to place any sort of guard or railing about said excavation in order to prevent persons going upon the premises of the defendant from falling into the same and being thereby injured.  The railway company filed an answer wherein it made a denial of the facts upon which the plaintiff relied as showing negligence on its part.  On the trial, however, the jury returned a verdict in favor of the plaintiff; and it is to the refusal of the court to grant a new trial that the company excepts.

Before undertaking to deal with the several assignments of

error set forth in the motion for a new trial, it may be well to give a brief summary of the evidence touching the character of the hole or opening into which the plaintiff fell, and its situation relatively to the track on which the engine was placed and other points in the immediate vicinity. This particular track was a "spur" which, together with other tracks, passed along an embankment some fourteen feet in height. Through this embankment extended a brick culvert, built some time prior to the year 1875. From 1886 up to the time of the plaintiff's injury on February 17, 1902, this culvert had remained in the same condition, save for necessary repairs, in which it was on that date. The stream running through this culvert passed through the company's yards, under about ten freight-tracks, under its coal-chute, then under two passenger-tracks, and then under two tracks leading to its shop-yard. At several points, between different sets of tracks, the ravine through which this stream ran was exposed to view, the coal-chute being at one of these points. The "spur" track on which the plaintiff found the engine on the night of his injury was the outside track and was laid so close to the edge of the culvert that there was no passageway between the end of the cross-ties and the edge of the opening; nor was this opening guarded by any railing extending from one side of the embankment to the other. There was, however, a free passageway between this track and the one next to it, the spaces between the rails and those between the several tracks at this point, where they crossed the culvert, having been filled in with earth and cinders. The exposure on the outer side of the "spur" track, caused by its proximity to the edge of the culvert, was an open and obvious one. By day the situation could have been taken in at a glance by the casual observer. At night, one passing along the railway embankment might, in the darkness, fail altogether to observe the ravine on one side where it was not spanned by the culvert, especially if one were not familiar with the locality. It was customary for the company's hostlers, in the discharge of their duty, to bring engines from the round-house, and to place such of them as were to go out on the Southwestern division upon this "spur" track. Engines had sometimes been placed below the culvert, though they were usually left the distance of a block or so above. On the night of the plaintiff's injury, three

engines were brought from the round-house and placed on this track in readiness for the engine crews, that on which the plaintiff was expected to go being the last in line, so that the others might start out ahead.　　It was left over the culvert, and the engineer and the plaintiff were expected to locate it and take it in charge.

1. On the argument before us counsel for·the plaintiff in error very strenuously insisted that the evidence was not such as to support a verdict in favor of Price.　　The theory upon which he sought to recover was as follows:　　He was sent for in the middle of the night, and called on by the company to serve as fireman on engine 1001.　　He was expected to find this engine, and, after locating it, to go around it and see whether or not it was in good order.　　Such being his duty, the company was bound to place the engine at a place where he could reach it in safety and perform his duty of inspection.　　Instead of choosing a safe place, the company's hostler left the engine over the culvert, negligently failing to observe the open ravine at this point, of which he had, or ought to have had, knowledge.　　Plaintiff received no warning of the dangerous locality in which the engine had been left; did not know of the existence of any culvert in that part of the company's yard; had never before been called on to take an engine so far down on the "spur" track, and had no reason to apprehend that the engine had not, as always theretofore, been left in a place of safety.　　After arriving at the company's yards, he went in search of engine 1001, going along the embankment between the "spur" track and that next to it; and after locating the engine, he got on it, changed his clothes, attended to minor duties inside the cab, and then took his hammer, wrench, flambeau, and oil-can, and started on his tour of inspection, getting off the engine on the same side from which he had boarded it, which was the side next to the adjoining track on the left.　　After examining the left side of the engine, he got in the middle of the track and looked at the headlight, turned it down, and then got on the pilot in order to reach and adjust the "spark slide."　　From the pilot he stepped to the outer rail, then upon the cross-ties, and started to go around on the right side of the engine, but fell over the culvert into the ravine below, sustaining the injuries of which he complains.　　If this represents the real truth of the matter, then it was for the jury to say whether or not the plaintiff, on this occasion, acted with due caution and circumspection.　　But the contention of the

company is that such does not constitute the entire truth surrounding the occurrence, even though the plaintiff gave a truthful account of the manner in which he received his injury. His stout avowal that, prior to the night of February 17, 1902, he had no knowledge of the existence of a culvert in that immediate vicinity, and was unfamiliar with that particular locality, is as strongly denied by the defendant company. Moreover, it insists that even if the plaintiff did not have actual knowledge of the precise location of this culvert and open ravine in its yards, his opportunities for knowing all about the same had previously been such that he can not now be heard to say that the company was under any duty to give him notice thereof, to the end that he might, on the night of February 17, have watched out for and discovered the culvert and have observed that engine 1001 had been placed directly over it. The defense thus interposed was such as, if sustained, would defeat any recovery by the plaintiff. *Blackstone* v. *Railway Co.*, 112 *Ga.* 762, and cit. And this defense was supported by testimony which demonstrated that if Price did not have actual knowledge of the existence and precise location of the culvert, his opportunities for knowing had been such that the law would impute knowledge to him. On the argument before this court, counsel for the defendant in error conceded Price's general knowledge of the existence of the culvert and the open ravine running through the company's yard, but contended that, relatively to the place where the locomotive was stationed, he did not know of the precise location of the culvert. The law charges the servant with what he ought to have known, and will not excuse him for not knowing in case he has been negligently unobservant. Price had worked in the yards of the defendant company, first as section hand, afterwards as fireman on a switch-engine; and at the time of the injury was employed as fireman on a freight-train. His employment as fireman on a switch-engine extended over a period of about two years; he had previously worked as a section hand about six months. During this time there had been no change in the physical appearance of the culvert. With such opportunities for obtaining knowledge of the location of the culvert, the conclusion is irresistible that an ordinarily prudent man, under similar conditions, would have known of its location.

2. On the trial the plaintiff sought to contrast his diligence, on the night of his injury, with that of the company's hostler. To this end the plaintiff showed that he walked down the railroad embankment between two tracks, and was therefore not in a good position to discover the culvert, whereas the hostler's post of duty was on the right-hand side of the engine, from which side he had full opportunity to observe the culvert as he approached it with the engine. The court charged the jury that should they believe from the evidence that the place in which the engine was left was not reasonably safe, and the company knew or ought by the exercise of ordinary care to have known of the danger, and "that Sam Price did not know of it at the time of the alleged injury and had not equal means of knowing such danger and could not by the exercise of ordinary care and diligence at the time of the alleged injury have known of such danger," then the plaintiff would be entitled to recover. The court further instructed the jury that "the conduct of the parties to this case, the conduct of Sam Price, the conduct of the railway company, as represented by its officers, servants, and employees, is to be tested by ordinary care and diligence at the time of the alleged injury; that care and diligence which every prudent man would exercise under the same or similar circumstances and conditions." The complaint made of these instructions is that the court thereby limited the jury to a consideration of the conduct of Price on the night of the injury, and entirely ignored the company's defense that he might previously have known all about this culvert, and ought to have become perfectly familiar with its location, even though he may not have had any actual knowledge concerning it prior to the time he was hurt. The criticism is just. Moreover we find, upon inspecting the entire charge of the court, that in it no reference whatever was made to this aspect of the company's defense, but that it was wholly deprived of all benefit of the same.

The court further committed error in charging upon the assumption that the capacity of the plaintiff to earn money might have increased, there being no evidence to warrant such a charge.

Over the objection of defendant's counsel, the plaintiff was permitted to elicit from the company's engineer the statement that when, shortly before the plaintiff's fall, the witness had himself boarded the engine, he did not know it was over the culvert.

This testimony was not only irrelevant but prejudicial to the defendant. The engineer may, or he may not, have been a man who exercised ordinary care and diligence. His conduct on that night was not the subject-matter of investigation, and his failure to note the culvert could not illustrate the issue whether or not the plaintiff might, in the exercise of reasonable care, have discovered that the engine was over the same.

Complaint is made that the plaintiff was also allowed to show that at the end of a culvert near the coal-chute the company had erected a guard-rail. This evidence was certainly incompetent for the purpose of showing a quasi admission on the part of the company that the erection of guard-rails in such places was a necessary precaution against injury to its employees. *Ga. So. & Fla. Ry. Co.* v. *Cartledge,* 116 *Ga.* 164; *Portner Brewing Co.* v. *Cooper,* Id. 175. The defendant had, it is true, brought out the fact that the plaintiff knew of that culvert at the coal-chute, with a view to showing that he must have observed that the stream passing under the culvert into which he fell ran all the way across the company's yard, and that he was familiar with its general direction and its location relatively to other points in the yard, including the place where he usually boarded his engine. Had there really been any pretense by the plaintiff that he did not know of the existence of a culvert at the point where he met with his injury or at a point other than at the coal-chute, the testimony objected to might have been competent to show that one seeing the condition of affairs at the coal-chute would not be put upon notice that, if there were other culverts, there might be danger in attempting to go around an engine or car standing over one of them, because of the absence of guard-rails. But as the plaintiff admitted he knew of the existence of the culvert across which the "spur" track ran, and that he had previously had full opportunity to observe that there was no guard-rail erected along its outer edge, this testimony threw no light on any issue in the case, and ought to have been excluded as wholly irrelevant.

Exception is taken to certain charges of the court on the ground that, by inadvertence, the judge used language calculated to impress the jury that the imputation of negligence against the company was to be accepted as an established fact. Another charge, touching the measure of damages, is also criticised on the

ground of inaccuracy of expression. We shall not, however, undertake to pass more specifically upon these assignments of error; as, if another trial be had, the court will doubtless so frame its charge as not to subject it to like criticisms.

*Judgment reversed. All the Justices concur.*