7346.  MITCHELL *v.* SCHOFIELD'S SONS COMPANY.

1. Exceptions to the rejection of evidence are without merit where it appears from the approved brief of evidence that the rejected evidence was, later during the trial, admitted for consideration by the jury.
2. Evidence in behalf of the plaintiff, that, after the collapse of a scaffold, resulting in the death of her son, the defendant took additional precautions in the rebuilding of the scaffold, to prevent others from being likewise injured, was properly rejected, although offered in rebuttal of the contention that defendant had provided him with a scaffold "equal to those in general use and reasonably safe." Such evidence can not logically be considered as in effect an admission that the defendant was negligent in not sooner observing such precautions.
3. In a suit against a master (other than a railway company) for the negligent homicide of the servant, where the evidence showed that the servant knew of a defect in a scaffold, complained thereof to the master, and was assured by the master that the place was safe, the following charge to the jury was harmful error:  "If you believe this scaffold was negligently built, and you also believe Mitchell was ordered to go in and upon this scaffold to work, with assurance from Stanley that it was safe, and such assurance on the part of Stanley was a negligent assurance or order or invitation to do the work, still if you believe that Mitchell knew of the defects in the scaffold, or if he had equal means with Schofield's Sons Company of knowing, or if by the exercise of ordinary care he might have known of the defects, if there were any, then I charge you Mrs. Mitchell could not have a verdict at your hands." This instruction was not expressly withdrawn, modified, or limited; and the court erred in overruling the motion for a new trial, in which error was assigned thereon.
4. The rule of res ipsa loquitur is not applicable in this case, and the request to give it in charge to the jury was properly refused.

DECIDED FEBRUARY 1, 1917.

Action for damages; from city court of Macon—Judge Hodges. February 21, 1916.

*R. S. Wimberly,* for plaintiff.  *Miller & Jones,* for defendant.

GEORGE, J.  This case was before this court at the March term, 1915; and the character of the action is sufficiently shown and the material facts of the case clearly stated in the opinion then delivered by Judge Broyles.  16 *Ga. App.* 686 (85 S. E. 978).  It is proper to add that the plaintiff predicated her action upon the theory that although her son, for the value of whose life she sued, believed that the scaffold in question was not substantial enough to carry the weight of the top of the creosote tank, the deceased and a fellow servant suggested this fact to Stanley, the defendant's vice-principal, who answered that he had built more towers and tanks than these servants ever saw, and knew more about it than

they ever would know, and directed them to go ahead and do what he said do, as long as he was foreman of the job. The second trial of the case resulted in a verdict for the defendant, the plaintiff's motion for a new trial was overruled, and she brought the case to this court for review.

1. The rejection of certain evidence is complained of in grounds 1, 2, 3, and 4 of the amendment to the motion for a new trial, but these exceptions are not of sufficient merit to require especial notice, and particularly since the rejected evidence was in substance admitted by the court, as will appear from a close reading of the brief of the evidence.

2. In ground 5 it is complained that the court refused, on cross-examination of the vice-principal of the defendant, to allow the following question: "When you rebuilt this scaffold, didn't you rebuild it with braces to the outside scaffold, with uprights down the middle, on the side, and with an upright in the middle of the scaffold to support the cone of the roof?" It is insisted that this question, to which an affirmative answer was expected, should have been allowed on cross-examination and in rebuttal of one of the contentions made by the defendant in error, to wit, that the scaffold was equal to those in general use and was reasonably safe. We think that this evidence was properly rejected, and that the same considerations of public policy stated by the Supreme Court of this State in the case of *Georgia Southern & Florida Ry. Co.* v. *Cartledge,* 116 *Ga.* 164 (42 S. E. 405, 51 L. R. A. 118), apply with equal force whether such evidence be offered in chief, or in rebuttal of one of the contentions made by the defendant in the trial of the case. *Central Ry. Co.* v. *Price,* 121 *Ga.* 651, 658 (49 S. E. 683).

3. In grounds numbered 6 to 19, inclusive, exceptions are taken to instructions to the jury. Many of these exceptions go merely to the form of expression used by the court, and are of no moment. Certain of the instructions do go to the very substance of the plaintiff's case. In ground 17 complaint is made of the following charge: "If you believe this scaffold was negligently built, and you also believe Mitchell was ordered to go in and upon this scaffold to work, with assurance from Stanley that it was safe, and such assurance on the part of Stanley was a negligent assurance or order or invitation to do the work, still if you believe that

Mitchell knew of the defects in the scaffold, or if he had equal means with Schofield's Sons Company of knowing, or if by the exercise of ordinary care he might have known of the defects, if there were any, then I charge you Mrs. Mitchell could not have a verdict at your hands." Was this charge the law of the case? It will be conceded that it is the master's primary, non-delegable duty to furnish the servant a safe place in which to work, and the servant has a right to rely, without inspection, on the assumption that the master has performed this duty. If at any time the place seems unsafe, it is his duty to inform the master of that fact, and if the master assures him that he, the master, knows his business, and that it is safe, the servant has the right to rely on that assurance, unless the danger is so obvious that no man of ordinary prudence would take the risk. On principle, it would seem that the question for solution would be: Did the servant exercise ordinary care in continuing at the work? If he did, then he should be allowed to recover. To hold otherwise would in effect preclude all claims where the servant relied on the assurance of the master after he (the servant) had complained that the place or appliance was in a dangerous condition. The very fact of the complaint shows that in the servant's judgment the place or appliance was dangerous. The substantial fact to be determined in such case—and that by the jury—is: Did the servant exercise ordinary care and prudence in continuing in the employment and in the use of the scaffold in question? We of course exclude that class of cases where the danger of remaining at work is so hazardous that ordinary minds would not differ in saying that the servant should not have so remained, but if it is a question about which reasonable minds might differ, then it should be determined by the jury. This charge of which complaint is made amounts to the direction of a verdict for the defendant; because it must be remembered that the plaintiff's case is predicated upon the proposition that her son knew of the defect in the scaffold, and complained of it, and was assured by the master that the master knew its business and that the scaffold was safe.

How does the statement embraced in the excerpt quoted from the charge stand upon authority? In *Bush* v. *West Yellow Pine Co.*, 2 *Ga. App.* 295 (58 S. E. 529), it was held: "While ordinarily the law reads into contracts of employment an agreement

on the servant's part to assume the known risks of the employment, so far as he has the capacity to realize and comprehend them, yet this implication may be abrogated by an express or implied contract to the contrary; if the servant complains to the master that the instrumentality appears to be dangerous, and thereupon the master commands him to proceed with the work and assures him there is no danger, the law implies a quasi new agreement whereby the master relieves the servant of his former assumption of the risk and places responsibility for resulting injuries upon the master." In *Smith* v. *Southern Railway Co.*, 8 *Ga. App.* 822 (70 S. E. 192), it was declared: "The agreement of the servant to assume the risks incident to his employment, which may ordinarily be implied as one of the stipulations of the contract of employment, may be abrogated by an express or implied contract to the contrary. If the servant states to his master that the performance of a duty in a certain way is likely to be dangerous and to render the place where he is working unsafe, and thereupon the master assures him that the act which he requires him to do is not attended with danger, and the servant, upon this assurance and the implicit command of the master, attempts to do the act which the master suggested could safely be done, and, in doing it, is injured, the master is liable, because the law implies a new agreement, superseding the agreement to assume the risk, whereby the master relieves the servant of his former assumption of the risk, and places the responsibility for the results of his command upon himself." In *Massee & Felton Lumber Co.* v. *Ivey*, 12 *Ga. App.* 583 (77 S. E. 1130), it was held: "Under the allegations of the petition, the servant's implied assumption of risk was abrogated by the assurance of the defendant's foreman that he was in a safe place to work, and the foreman's command that he continue to work with the instrumentalities which had been furnished by the master." The court declared that case to be controlled by the rulings in *Bush* v. *West Yellow Pine Co.* and *Smith* v. *Southern Railway Co.*, supra, and declined to overrule the decisions in those cases. The same principle is ruled in *Cherokee Brick Co.* v. *Hampton*, 16 *Ga. App.* 53 (84 S. E. 328). Thompson, in his Commentaries on the Law of Negligence, vol. 4, § 4664, says: "It may be collected from the almost unanimous current of judicial authority that, if the servant complains of or directs attention to a

defect or danger in the place where he is required to work, or in the tools, machinery, or appliances with which he is required to work, and thereupon the master, or his representative, assures him that he can proceed without danger, and requests or commands him to continue his work, the servant will not, as matter of law, be put in the position of having accepted the risk, or of having been guilty of contributory negligence, because of relying upon the presumedly superior knowledge of his master or of his master's representative, and continuing the work. The servant will not be imputable with wrong for thus acting upon the advice or assurance of the master or his vice-principal, nor will it lie in the mouth of the master to impute blame to the servant for so doing. So, it has been held that a servant has a right to rely on the superior judgment of the master in directing certain work to be done in a particular way, although the servant knows the dangerous character of the work, unless the danger is so manifest that no reasonably prudent man would undertake it in the same situation. A possible exception to the rule arises where, notwithstanding the advice, assurance, or command, the *danger is imminent and glaring,* or at least so obvious that an ordinarily prudent man would not, even under the circumstances, encounter it."

In a case of this character the master may plead, (1) that the servant assumed the risk incident to the work, and (2) that he was guilty of negligence in continuing in the work, and that this negligence either partially or entirely caused his injury. These defenses are distinct, although in actual practice they often merge. While the servant ordinarily assumes the risk incident to his employment, yet, if the servant complains of a defect in the place or appliance, and is expressly assured by the master that the place or appliance is safe, the servant can not be held as matter of law to have assumed the risk incident to the work, but it then becomes a question whether he has brought about, by his own negligence, the injury of which he complains. It is clear that, where he knows of the defect in the place, and complains of it to the master, and is by the master assured that the place is safe, and relies on such assurance, his contributory negligence in remaining in the work will defeat his action only when ordinary minds would not differ in saying that his act in remaining was so obviously dangerous that no prudent man would continue in the work. In the

instant case, if the jury should find that Mitchell complained of a defect in the scaffold, and if they should find that the master negligently assured him that the scaffold was safe for the purposes intended, the plaintiff may recover, unless the defect was so obviously dangerous that no ordinarily prudent person would continue to use the scaffold. While the defenses referred to above, under these facts, practically merge, it can not be stated, as a matter of law, on the facts in this record, that the servant did assume the risk of going upon the scaffold; nor can it be said, as a matter of law, as the court in this case did say, that his act in going upon the scaffold, with knowledge of the defect, was such contributory negligence as would bar a recovery. Of course, the plaintiff can not recover if her son failed to exercise ordinary care in the premises, notwithstanding the express command and assurance of the master. Every one is bound to exercise ordinary care for his own protection, and what is ordinary care must necessarily depend in every case upon all the facts and attendant circumstances of the case. If no ordinarily prudent person would go upon the scaffold with knowledge of the defects therein, then the plaintiff in this case can not recover, even though the jury should find that there was an express command, negligently given, by the master to go upon the scaffold, coupled with an express assurance that the scaffold was a safe place for the purposes intended.

Since the excerpt from the charge of the court, herein considered, was nowhere in the charge expressly withdrawn, limited, or modified, a new trial must be granted the plaintiff. We are loath to disturb this, the second, verdict for the' defendant, but the plaintiff is entitled to have her case' submitted to the jury with proper and correct instructions on the law; and until this has been done, it is the duty of this court to interfere in her behalf. The learned trial judge, who at the time of his death was a member of this court, with the commendable frankness apparent throughout his judicial career, impressed upon the jury the controlling principles of the law applicable to this case, as he understood them. We simply differ, with all due deference to the views of our departed brother, in the application of the substantive principles of law to the facts in this case.

3. The plaintiff excepts to the refusal of the court to give in charge certain requests applying in effect the rule of res ipsa

loquitur. The charge requested is not applicable to the facts in this case, and is not applicable in any case between a master and a servant where the evidence accounts for and explains the cause of the occurrence or accident. 4 Labatt on Master & Servant (2d ed.), § 1361 et seq.

The judgment overruling the motion for a new trial is

*Reversed. Wade, C. J., and Luke, J., concur.*