*L*

---

MICHAEL CAVANAUGH, Appellant, v. CENTERVILLE BLOCK COAL CO.

**Master and servant:** NEGLIGENCE: PROXIMATE CAUSE. The master
1  is not liable for an injury to a servant where there is no causal relation between the injury and the negligent act of the master.

**Mines and mining:** DUTY OF MASTER: NEGLIGENCE OF CO-EMPLOYÉ.
2  Where a miner engaged to mine coal and deliver .it in cars at the main entry at a specified price per ton, the owner was under no obligation to assist him in replacing a derailed car on that part of the track over which he had control; and the act of the pit boss in voluntarily rendering him assistance was that of a co-employé for whose negligence in so doing the master was not liable.

*Appeal from Appanoose District Court.*— HON. FRANK W. EICHELBERGER, Judge.

TUESDAY, OCTOBER 23, 1906.

ACTION to recover damages for personal injuries alleged to have been sustained by plaintiff by reason of the negligence of defendant's employés. At the conclusion of the plaintiff's evidence the court .sustained a motion to direct a verdict for the defendant, and from the judgment on such directed verdict the plaintiff appeals.— *Affirmed.*

*Baker & Baker,* for appellant.

*Howell & Elgin,* for appellee.

McCLAIN, C. J.— The ultimate facts which the evidence for plaintiff tended to establish, so far as they are

material to the determination of the questions involved, are
as follows:   The plaintiff was, at the time of receiving the
injury complained of, engaged as a miner in the coal mine
of defendant, under the usual arrangement, by which he was
allowed to work under the general direction of defendant's
pit boss, and receive pay at a specified price per ton for coal
mined by him and delivered at the mouth of the shaft.
Miners in defendants' mine work in rooms which are ex-
tended back by them, in carrying on the operation of getting
out the coal, from the main entry to the depth of about one
hundred and twenty-five feet, and it is the business of the
miner to pick or blast down the coal on the face of the vein as
the room is extended back from the main entry, load the coal
upon cars furnished by the company at the mouth of his
room, and deliver these cars in the entry, where they are
taken by the drivers, and hauled by mules to the shaft, to
be elevated by machinery to the surface.   As the thickness
of the vein of coal which was being mined in this mine was
only sufficient to allow the use of the small cars employed
for transporting the coal from the place where it was mined
to the entry, and would not permit the passage of the mules
without some additional height being furnished in the entry,
it was necessary to dig out the dirt below the coal vein and
also above, so that the entries might be sufficient in height
to allow the mules to pass through; and in such entries iron
tracks were constructed on which the cars might run.   This
work of preparing the entries for the operation of the cars
propelled by mules and laying the track for the cars to run
upon was done by the company, employing for that purpose
men paid by the day, and the company constructed for each
room a slope from the entry up to the level of the floor of
the room, and laid upon this slope iron switch rails, con-
nected, with the main track in the entry, and wooden rails
connected with the iron switch rails, thus extending the track
up into the opening of the room.   The additional wooden
rails necessary to carry the car back into the room to the

face of the coal where the miner would load his cars were laid by the miner himself, as he had occasion to need them. It thus appears that the company was responsible for the condition of the track up the slope into the room in which the miner should work, and the miner was responsible for the condition of the track extending into the room itself. Plaintiff, having been assigned to the room in which he was working, loaded a car furnished him by the pit boss, and with the assistance of the boss was pushing it out of his room upon the switch furnished by the company, ready to be taken by the driver in the entry, as he should have occasion to attach it to a " trip " of cars being hauled to the shaft, when the car got off the track at the point where the first pair of wooden rails connected with the iron rails of the switch, and in putting the car back upon this track, with the assistance of or in conjunction with the efforts of the pit boss, plaintiff's fingers on one hand were injured by being pinched between the bottom of the car and a wooden prop which the pit boss has been using in " slewing " the front end of the car over onto the track, and which had been dropped by him; and as a result of this injury, which was not so severe as to prevent plaintiff from going to work the next day, but which was subsequently aggravated by blood poisoning, producing erysipelas, the plaintiff's arm had to be amputated, and his action is for the impairment of his earning capacity consequent on the loss of his arm.

There were various grounds urged in the motion for a directed verdict, but they are reducible to three propositions contended for in behalf of defendant as follows: First, that the negligence, if any, of defendant in failing to keep the portion of the track leading to plaintiff's room in proper condition for use was not the proximate cause of plaintiff's injury; second, that plaintiff's own negligence contributed to his injury; and, third, that plaintiff assumed the risks incident to the defect in the track. In the view which we take

of the case, it is only necessary to consider the question of proximate cause.

[b] Conceding that the track at the place where the car which the plaintiff and the pit boss were pushing down to the entry was derailed was furnished by the company and was in its charge, and that it was negligent in allowing such track to be defective, the question is whether the injury to plaintiff was the proximate result of the derailing of the car. [b] The situation was this: Plaintiff as a miner was engaged on his own responsibility in propelling this car to the entry. This was a part of the duty which he must perform to secure compensation for the mining of the coal, for he was paid only as the coal was delivered at the mouth of the mine. Plaintiff was not under any duty to the company to operate this car, save that if he did not, with reasonable diligence, prosecute his business of getting out coal, he was subject to be discharged by the pit boss; that is, denied the further privilege of working in the mine. There was no emergency involved in the derailing of the car save the delay occasioned to the plaintiff in prosecuting his business. Plaintiff was not entitled to the assistance of the pit boss or any one else connected with the operation of the mine in pushing his car to the entry, save as such assistance was, as it appears, rendered necessary and promised to him in consequence of the switch track not being in good order, and the further fact that the pit boss, desirous of having coal taken from the room to which plaintiff had been assigned, had promised assistance in getting out plaintiff's cars until the track should be put in better condition. The general custom, as it appears, was for miners who had trouble in getting out their cars to call for assistance on their fellow miners, or any one employed in the mine. On a previous day, while working in this same room, plaintiff had the assistance of the driver in getting out one of his cars, but it was not the duty of the pit boss or any other employé of the mine to give assistance to the plaintiff

1. MASTER AND SERVANT: negligence: proximate cause.

save as such assistance had been promised in this particular case on account of the defective condition of the track. Therefore, when plaintiff's car was derailed, the responsibility of getting it back on the track, in order that he might push it onto the switch, rested upon him. Assuming that the injury to the plaintiff was received while he was engaged with the assistance of the pit boss in replacing the car upon the track, we think that it was not the proximate result of the defect in the track which· had caused the derailing of the car. It appears that cars become derailed from various causes. If the derailment had occurred on a portion of the track for the condition of which the plaintiff was responsible, the same kind of an accident in replacing the car on the track might, as well, have happened. The proximate result of the defect in the track had been completely reached when the car became derailed. What was subsequently done had no immediate causal relation with the defect which produced the derailment. If it had appeared that the derailment was due to the negligence of plaintiff, he would not have thereby been precluded from recovery if the company were chargeable with negligence in what subsequently took place. The defective track was not even the condition which led to the injury of the plaintiff. The condition immediately attending or preceding the injury was the derailed car, and the defect of the track was therefore nothing more than the cause·of a condition.

In support of our conclusion, it would be idle to attempt any exhaustive citation of authorities, nor would it be practicable to state any rule which may be applied to·all cases involving the question of proximate cause. A rule general enough to cover all cases would be too general for any practical purpose. Two illustrations will sufficiently serve to indicate the conclusion reached by this court in cases very similar to the one before us. In *Watters v. Waterloo,* 126 Iowa, 199, it is said that causal relation does not exist where the result proceeds from a source wholly independent of the

cause insisted upon, and comes into proximate relation with such cause only by reason of being aided in some way by one or more of the results flowing from such original cause. That was a case where recovery was sought for injury by an accident consisting of a fall on an icy street, which it was claimed was the proximate result of a prior fall due to a defective sidewalk, causing the injured party to have occasional spells of dizziness, during one of which his fall on the icy street had subsequently occurred. That case is quite analogous, for the condition of dizziness accompanied or produced the fall on the icy street, while the previous fall on the defective sidewalk was merely a cause of such condition. In *Parmenter v. City of Marion,* 113 Iowa, 297, it was said that the act of the city in negligently allowing a platform to project over the sidewalk was not the proximate cause of an injury to a passerby who was struck by a bale of hay falling from such platform; the platform being, as it was held, a mere condition, and not the proximate cause of the accident. The case of *Andrews v. Chicago & G. W. R. Co.,* 129 Iowa, 162, is also very much in point.

The cases relied on by counsel for appellant are not in point. In *Hayes v. Michigan Central R. Co.,* 111 U. S. 228 (4 Sup. Ct. 369, 28 L. Ed. 410), the question was whether the wrongful failure of the defendant company to fence its track was the proximate cause of an accident to a boy who attempted in response to a signal from another boy, to get upon a moving freight train. The court, in reversing a judgment on a directed verdict for the company, said (page 241 of 111 U. S., page 374 of 4 Sup. Ct. [28 L. Ed. 410]) : " It is further argued that the direction of the court below was right, because the want of a fence could not reasonably be alleged as the cause of the injury. In the sense of an efficient cause, *causa causans,* this is, no doubt, strictly true; but that is not the sense in which the law uses the term in this connection. The question is, was it *causa sine qua non,* a cause which, if it had not existed, the in-

jury would not have taken place, an occasional cause?
and that is a question of fact, unless the causal connection
is evidently not proximate." Whether the question is made
any easier by speaking of the *causa sine qua non* rather than
the *causa causans,* we need not consider, for the court found
that the duty imposed on the company by ordinance to main-
tain a fence was imposed by way of precaution to lessen the
danger of such accidents as that which·actually happened,
and there was, therefore, an immediate proximate connection
between· the neglect of duty and the resulting accident, which
the performance of the duty might reasonably have tended
to prevent.

In *Aldrich v. Concord & Montreal Railroad,* 67 N. H.
380 (36 Atl. 252), the defendant company was held liable
for injury to an employé from the falling of logs from a
freight car on which they were loaded, the supports intended
to hold the logs in place having been weakened by the shock
due to the previous derailment of the car. But evidently
there was here no intervening responsible cause. In *Knapp
v. Sioux City & P. R. Co.,* 65 Iowa, 91, Id., 71 Iowa, 41,
it was held that where the defendant's negligence in failing
to keep its track in repair, caused a locomotive engine in
charge of the plaintiff to leave the track, and brought about
the occasion for plaintiff to reverse the lever in order to ar-
rest the movement of the engine and avert the dangers in-
cident to such an accident, the negligence of the company was
the proximate cause of an injury to the engineer, due to his
effort in thus reversing the engine. Here it is apparent the
defective condition of the track brought about the very ne-
cessity to act under an emergency which was the cause of the
injury. But in the case before us there was no emergency,
no occasion to act in one way rather than in another. The
derailing of the train in the Knapp case necessitated one
specific act on the part of the engineer — that is, the throw-
ing back of the lever to reverse the engine — while in this
case the derailing of the car necessitated no act whatever as

an immediate consequence, and left the plaintiff free to do whatever he might see fit toward obviating the inconvenience resulting from the derailment. He could have unloaded his car and pulled it back upon the track, or he might have secured more assistance, so that it could be put on the track without using the prop as a pry, or he might have secured some other implement than the prop by means of which he and those helping him could have replaced the car upon the track. He might act promptly, or he might act with the greatest deliberation and foresight. There was no emergency and no necessary connection between the result of the defective track and the means to be employed for remedying the condition which had arisen by reason of such defect. In speaking of an adequate and independent intervening cause, as cutting off the connection between a negligent act and a subsequent injury, it is not proper to require that the intervening cause to be searched for be one involving negligence or wrong. When an adequate intervening cause is found, it is immaterial whether that cause is one involving liability or not. It is enough that it is an independent, responsible cause. 1 Thompson, Negligence, section 54. Or, if we adopt the view which Judge Thompson prefers, that the proximate cause is the probable cause, and the remote cause is the improbable cause (1 Thompson, Negligence, section 50) we are still wholly without support for the position of counsel for appellant, for no result of a defective track could be more improbable or further beyond the anticipation of a reasonable man than that in attempting to replace a car derailed by reason of such defect the miner would have his fingers pinched between the end of the car and a prop which somebody should bring to assist in " slewing " the car onto the track, and which should thereafter be dropped where the car would drive the miner's hand against it. Of course it is not necessary, as said in many cases, that the proximate result be one which could be anticipated in detail, but how much further could any one have fore-

seen or anticipated the course of events following a defective track than that a car should, by reason of the defect, run off the track, and perhaps cause injury to some one before the force of its momentum should be fully checked? We reach the conclusion, therefore, that there was no causal relation between the injury to plaintiff and the negligence of the defendant in allowing that portion of the track extending toward and into the room where plaintiff was at work, and for the maintenance of which it was responsible, to be out of repair.

But counsel further insist that there was negligence on the part of defendant represented by the pit boss as vice principal in connection with the replacing of the car upon the track, and that plaintiff was entitled to recover on account of such negligence. Without discussing in this connection the questions of contributory negligence or assumption of risk which are referred to in arguments of counsel, it is sufficient to say that the defendant company was chargeable with no duty in regard to replacing this car upon the track. It did owe plaintiff the duty of furnishing him a safe place to work at the place of the accident, and if he had been injured by his car running off the track, then, no doubt, the company would have been liable, barring, of course, contributory negligence or assumption of risk; but he was not injured by reason of his car running off the track, and therefore the duty to furnish him a safe place to work was not involved. There was no duty to furnish him tools and appliances which was broken, for the car was not in any way defective, and as to the use of the prop to pry it back on the track such use was entirely within the plaintiff's discretion. There seems to have been no duty on the company to furnish miners with special appliances for getting the cars upon the track after they should, for any reason, have run off. Witnesses testified that under such circumstances, if the car is lightly loaded, the miner lifts it back

2. MINES AND MINING: duty of master: negligence of co-employé..

himself; if heavily loaded, he unloads it, or gets some one to assist him, or in whatever way he finds available, and at his own discretion and risk, he accomplishes the replacement of the car.

It is further urged that the pit boss negligently directed the plaintiff to place himself in front of the car, and to lift, in order to replace the car upon the track; but in this respect the pit boss was certainly not acting as vice principal. From the evidence, the fact would appear to be that the pit boss was anxious to have as much coal run out as possible, and urged plaintiff to load some cars in this room where he had previously been at work, and run them out, and to induce him to do this over a track which required greater exertions than usual he offered to furnish him assistance; but any assistance thus furnished him was the assistance of a co-employé and not of a vice principal. Such assistance was furnished on a previous day under somewhat similar circumstances by a driver, and on the day in question by the pit boss himself; but the fact that the pit boss was for some purposes a vice principal did not necessarily make him a vice principal in everything which he did. If he acted as an operative only, the liability of his master for his acts was not other or different from that which would result with reference to the acts of any other operative. *Collingwood v Illinois & Iowa Fuel Co.,* 125 Iowa, 537; *McQueeny v. Chicago, M. & M. St. P. R. Co.,* 120 Iowa, 522; *Fosburg v. Phillips Fuel Co.,* 93 Iowa, 54; *Beresford v. Am. Coal Co.,* 124 Iowa, 34; *Barnicle v. Connor,* 110 Iowa, 238; *Scott v. Chicago G. W. R. Co.,* 113 Iowa, 381.

There was entire failure of plaintiff to make out any negligence on the part of defendant proximately contributing to plaintiff's injury, and the judgment is *affirmed.*