GEORGE B. BROWN, Appellant, v. ROCKWELL CITY CANNING CO.

**Negligent operation of machinery:** EVIDENCE. In an action for 1 the injury and death of a child, caused by the operation of certain machinery, the evidence is held insufficient to establish defendant's negligence in failing to properly guard the same.

**Same:** SPECIAL PRECAUTION FOR CHILDREN. The maintenance and 2 operation of machinery, for a legitimate purpose, in an enclosed building and with ordinary and suitable protection is not negligence, although attractive to children and no special guard is employed to look after their safety.

**Contributory negligence:** PROXIMATE CAUSE. Where the injury to a 3 child is the result of its own voluntary act independent of any wrongful act or omission on the part of defendant, a question of proximate cause is presented rather than one of contributory negligence.

**Injury to trespassers:** PERSONS NOT SUI JURIS. In determining the 4 liability of the owner or operator of machinery for injury to a trespasser upon the premises the mental capacity of the injured party is immaterial.

**Same:** LIABILITY OF INDEPENDENT CONTRACTOR. Where machinery is 5 to be installed and tested by the seller before acceptance he is liable as an independent contractor for its negligent operation during the trial test, though the power by which is was operated

may have been furnished the seller through an arrangement with the purchaser.

**Pleadings:** NEGLIGENCE. In an action for a death caused by an alleged negligent operation of machinery the defendant under a general denial may show that the negligence, if any, was that of an independent contractor.

**Evidence:** DECLARATIONS OF AGENT. The rule that declarations of an agent are not binding upon the principal until the agency has been established by evidence independent of the agent's statements, has no application to the testimony of the agent regarding facts which render a contract made by him binding upon his principal.

*Appeal from Calhoun District Court.*— HON. Z. A. CHURCH, Judge.

SATURDAY, DECEMBER 15, 1906.

ACTION to recover damages to plaintiff resulting from the death of his minor child, alleged to have been due to the negligence of defendant. At the conclusion of the evidence, the court sustained a motion to direct a verdict for the defendant, and plaintiff appeals.— *Affirmed.*

*Gray & Gray,* for appellant.

*M. W. Frick* and *E. C. Stevenson,* for appellee.

McCLAIN, C. J.— In August, 1902 the defendant company was installing a plant at Rockwell City, to be used in carrying on the business of canning corn. This plant consisted of a main building, in which was the principal part of the machinery to be used, and an annex in which the corn was to be husked. In the annex, which was removed a short distance from the main building, was a corn conveyor, on which the ears of corn as husked were to be thrown, and an elevator to carry the ears from the annex into the main building. The elevator consisted simply of a broad belt, with cleats across it, running on two cylinders of some

kind, one at each end, supported by a slanting framework resting on posts. The power to cause the belt to operate so as to carry up the corn was applied by means of a sprocket wheel attached to the cylinder at the lower end of the elevator near the floor. The machinery was being supplied to the defendant company by the Globe Machinery & Supply Company under an oral contract made by one Harrison as the agent of the latter, by which it was agreed that the machinery should be installed and prepared for operation by the Globe Company; the defendant providing the building and designating the location for such machinery. The defendant was to furnish the Globe Company such employés as were needed by the latter. The machinery was not to be accepted by the defendant until it was installed and tested and found satisfactory. On the 19th of August a test of the corn carrier and elevator was being made under the immediate supervision of Harrison as representative of the Globe Company, on the general suggestion of one Loveland, as representative of the defendant, that such test should be made. The machinery was not in fact accepted by the defendant until the 25th of August. While this test of the elevator was being made on the 19th of August, the son of plaintiff, a boy of eleven years of age, who had been with other boys playing about the machinery in the annex, thrust his arm between two of the parts supporting the framework of the elevator, so that his sleeve was caught in the sprocket wheel, and his arm so injured that an amputation near the shoulder was necessary. Subsequently, and, as claimed by the plaintiff, in consequence of this injury, the boy became afflicted with diabetes and died, and plaintiff seeks to recover damages suffered by him through the injury to and consequent death of his son.

The insufficiency of the evidence in various respects to warrant any recovery by the plaintiff was presented in the motion for a directed verdict, which the court sustained, and the ultimate question for our determination on plaintiff's

appeal is whether there was any evidence on which, if submitted to a jury, a verdict in plaintiff's favor might properly have been rendered.

I. Various grounds of negligence on the part of defendant were alleged, but these may be resolved into two — that the machinery was dangerous and not properly **1. NEGLIGENT** guarded, and that it was attractive to chil-**OPERATION OF MACHINERY.** dren, and defendant did not take proper precautions to prevent access to such machinery by plaintiff's son. But we think, that in neither of these respects did the plaintiff make out a case of negligence. The sprocket wheel which caused the injury to plaintiff's son was inside the posts supporting the framework of the elevator. No one could come in contact with it without reaching in between the posts. There was no danger from the spocket wheel to those who might be passing or standing by. Plaintiff's son was injured while attempting to reach in between the posts for the purpose of snatching off from the belt as it descended on the under side some article which his companions had thrown upon the belt further up. There was no evidence whatever to indicate that any other guard than that furnished by the posts themselves was generally considered necessary for the safety of the operation of such machinery, nor that any more effective guard than was afforded by the framework of the elevator could have been provided. This is not a case where the happening of the accident itself gives rise to a presumption of negligence on the part of the person having control of the machinery. There is no occasion for any presumption, for the exact facts are detailed by eyewitnesses.

The principal contention on behalf of appellant with reference to defendant's negligence is that the machinery was attractive to children, and should have been so guarded **2. SAME: special** as to prevent their access to it. It is thus **precaution for children.** sought to bring the case within the principle of the "turntable cases," and to hold the defendant liable

under an application of that principle. We think the case is not analogous to the "turntable cases." The rule announced in those cases, in accordance with which the owner of machinery attractive to children is charged with an affirmative duty to guard against injury to children who may be attracted by it, wherever recognized at all (and it has been repudiated in some jurisdictions), is conceded to be exceptional, and not one which is capable of universal application to all machinery used in manufacturing industries. In the case in which this court has finally committed itself to the support of the so-called "turntable" rule, *Edgington v. Burlington, C. R. & N. R. Co.*, 116 Iowa, 410, the liability of the defendant was expressly placed on the fact that the defendant had allowed its turntable, in an open lot to which children might readily have access, to remain unlocked and unguarded, so that by their own action in setting it in motion the plaintiff, a child of tender years, was injured.

The facts of this case do not bring it within any such rule, nor are they so far analogous that in reason the same principle should be applied to them. The machinery was not in an open lot unattended, but was in an inclosed building, into which it might be reasonably supposed no one would come without proper occasion. It was not negligently left unguarded, for the superintendent of the defendant and the representative of the Globe Company, and other employés, were about the building, and some of them had warned boys away from the machinery. It was not negligently left unlocked or unfastened, for it could not have been locked or fastened without interfering with its legitimate and proper use. It was not operated by the children as a plaything, but was set in motion for a legitimate purpose, by means of power furnished from the main building. We think the rule of the turntable cases is not therefore applicable, and does not support the contention of appellant's counsel that the facts bring the present case within the scope of that rule. In *Wood v. Independent School Dist.*, 44 Iowa, 27,

it was held that machinery necessary for the prosecution of a proper work, not unnecessarily dangerous in its construction, can be left unattended without constituting it a nuisance, even though it might be dangerous for children to play about it. In that case the child who was injured was properly on the premises where the machinery was situated. As said in that case, we think it would be improper to burden the mechanical industries of the country by a rule which would render the owner of machinery liable under such circumstances as those presented by the case before us. The only thing which the defendant could have done which it did not do to prevent the accident would have been to employ a special guard to stand by this machinery, and see that the boys did not play with it. This we think the defendant was not called upon to do in the ordinary prosecution of its business.

II. As to contributory negligence of the injured boy, a consideration of which was involved in the case, counsel for appellant contend that, in view of his age, it was a question for the jury. But the case before us is not one necessarily involving contributory negligence in the sense in which that term is usually used. The term is usually employed to indicate some fault on the part of one who is seeking to recover for injuries resulting, at least in part, from the proven negligence of another, and the question is whether the injured party has also been at fault in such way as to contribute, with the negligence of the other party, to the resulting injury. But in the case before us the question is rather one of proximate cause. Was the injury the result of the boy's own act, without regard to any wrongful act or negligent omission on the part of the defendant? If it was, then the age of the boy whose act brought about his own injury is wholly immaterial. Indeed, it is unnecessary to determine whether or not he was at fault, for, if there was no fault on the part of defendant, then there can be no re-

3. Contributory negligence: proximate cause.

covery. Now it seems to us perfectly plain that the boy's injury was the result of his wholly unwarranted and unnecessary act in thrusting his arm between the posts, so as to bring it in contact with the sprocket wheel. This was not the proximate result of defendant's operating the machinery, for it was a result which defendant had no reason to anticipate. *Cavanaugh v. Centerville Block Coal Co.,* 131 Iowa, 700.

III. It is argued that the injured boy was in the annex, which was to be used as a husking shed, for the purpose of husking corn, and in pursuance of an implied invitation, and therefore that the defendant was under obligation to look out for his safety. We find nothing in the record from which an invitation could be implied. This boy had previously been employed in the main building in unloading cans, but on the day in question there were no cans to unload. There was no invitation to him to be in the annex for the purpose of husking corn, for there was no corn there to husk. It is unquestioned that he and the other boys were there out of idle curiosity, and, while their presence there may not be necessarily imputed to them as a fault, it did not impose on the defendant any particular duty to look out for their safety, in the absence of reasonable knowledge or anticipation that their safety would be imperiled by the maintenance and operation of its machinery. We find nothing in the record to indicate that the superintendent of the defendant, or that Harrison, the representative of the Globe Company, or the employés assisting in the installation of the machinery, had any knowledge that the boys were playing about the machinery, or doing any acts with reference to it which involved them in any peril. The boys were, as already suggested, in the building, not in pursuance of any implied invitation, but for their own purposes, and no duty arose with reference to them until the employés of defendant had some reason to anticipate that they would be endangered

4. INJURIES TO TRESPASSERS: persons not *sui juris.*

by the operation of the machinery. In determining this question it is entirely immaterial to consider whether the boys were *sui juris* or not, for the inquiry is not as to the ability and capacity of the trespasser, but rather the duty of the one who is charged with the negligent acts. For this reason the better considered cases hold that it is entirely immaterial that the trespasser is an infant, idiot, or lunatic in determining whether he was a trespasser. *Thomas v. Chicago, M. & St. P. R. Co.*, 93 Iowa, 248, 255.

IV. The trial court, as indicated by a written opinion which is embodied in the record, expressly based the ruling sustaining the motion for a directed verdict on the ground

5. SAME: liability of independent contractor. that the machinery was in the charge of an independent contractor, the Globe Machinery & Supply Company, and that the defendant was therefore not liable for the negligence, if any, in its management; and this position, as it seems to us, is well taken. The testimony shows without contradiction that the Globe Company was to install the machinery, which was not to become the property of the defendant until it was finally accepted as satisfactory, in compliance with the contract. The power with which the elevator was run on this trial test, during which the boy was injured, was furnished by the defendant from the main building, but it was furnished and applied at the suggestion of Harrison, who was the representative of the Globe Company, and for the purpose of enabling him, acting for his company, to determine whether the elevator would work. The elevator was not being run for any purpose of the defendant company, but for the purposes of the Globe Company. Under these circumstances, we think there can be no doubt about the proposition that the Globe Company was an independent contractor, responsible to defendant only for results, and not as to methods, and that the defendant company was not liable for any negligence on the part of Harrison. *Francis v. Johnson*, 127 Iowa, 391;

*Bennett v. Town of Mt. Vernon,* 124 Iowa, 537; *Hoff v. Shockley,* 122 Iowa, 720; *Kelleher v. Schmitt & Henry Mfg. Co.,* 122 Iowa, 635; *Overhouser v. American Cereal Co.,* 118 Iowa, 417.

The contention for appellant that the pleadings raised no issue as to whether the Globe Company was an independent contractor is answered by the suggestion that the defendant denied its liability, and might under such a denial, show that the negligence, if any, was the negligence of some other responsible party. Proof that the machine was within the exclusive control of the Globe Company would sustain the general denial of liability on the part of defendant. *Overhouser v. American Cereal Co.,* 128 Iowa, 580; *Romer v. Stryker,* 142 N. Y. 134 (36 N. E. 808).

*6. PLEADINGS: negligence.*

The contention for appellant that the contract between the defendant and the Globe Company, by which the latter was made an independent contractor, was not established, is without merit. There is no conflict in the evidence on this point. That Harrison, the representative of the Globe Company, might testify as to the terms of the oral contract made by him in behalf of his principal, under which he was installing the machinery, is too clear for argument. The rule that the declarations of an agent are not binding on his principal until the fact of agency is established otherwise than by the declarations themselves has no application to the testimony of an agent with reference to the facts which render a contract made by him binding on his principal. If the boy who was injured had been an employé to whom the defendant owed the duty of furnishing a safe place to work, it might well be argued that defendant was liable for the dangerous condition of the place, if it was dangerous, although the danger was caused by the act of an independent contractor, for the defendant might be under obligation, even as against the act of an independent contractor, to see that the place was

*7. EVIDENCE: declarations of agent.*

safe, but here the defendant did not owe the boy who was injured any affirmative duty, and the injury which the boy received was not the result of any general unsafety of the place itself, but of the operation of the machinery, which was still under the control of Harrison as the representative of the Globe Company. The boy was not injured because the place was unsafe, but because he put his arm into a piece of machinery while it was in operation. In no view of the case, as we think, can the defendant be charged with responsibility for the consequences.

The motion for a directed verdict was properly sustained, and the judgment is *affirmed*.