**FORT WORTH & D. C. RY. CO. v. ROWE et al.**

No. 4167.

Court of Civil Appeals of Texas. Amarillo.

March 14, 1934.

Morgan, Culton, Morgan & Britain, of Amarillo, and Thompson & Barwise, of Fort Worth, for appellant.

Clayton & Bralley and Works & Bassett, all

170

MARTIN, Justice.

James Rowe was a switchman in the employment of appellant. About 8 o'clock p. m., on February 17, 1932, while on duty as such switchman, he received injuries from which he later died. At the time of such injuries he was standing on the back end of a tender attached to a switch engine, and as same was backing across Buchanan street he was struck by an automobile driven by one Willis Hill, breaking both of his legs. After his death his wife, Gertrude Rowe and appellee herein, brought suit against appellant individually and as next friend for her two minor daughters and as administratrix of the estate of said Rowe, alleging in substance the existence of the facts already mentioned, and further alleging:

"That said automobile was being driven by one Willis Hill along the west side and portion of said street in its proper position and at a reasonably safe rate of speed, said Hill having said car under his control and, as plaintiff understands and alleges the facts to be, said Hill approached said railroad crossing with due caution, both looking and listening for the approach of engines, cars or trains * * *.

"That said collision and the damages hereinafter shown proximately resulted from defendant's negligence through its said flagman, Williamson, in that he did not give warning to said Hill of the approach of said engine to said crossing and did not signal said Hill with his said lantern, or otherwise, to stop said automobile without attempting to cross said track while said engine was so approaching with deceased thereon as was his duty under the circumstances, until it was too late for said collision to be avoided, both to said Hill and deceased, and defendant's failure to discharge said duty was negligence and a proximate or a proximately contributing cause of all of the damages herein shown, it being further shown in this connection that deceased and said Hill had the right to expect and rely upon said Williamson to give warning of the approach of an engine or train to said crossing by signaling with said lantern and the light thereof, or by some other signal of warning that could be seen by said Hill, all of which said Williamson failed to do and which was negligence on the part of defendant under the circumstances."

The remainder of her petition contains the usual averments in cases of this character, not necessary here to mention.

To this petition the appellant filed a general denial and alleged specially that at the time the deceased Rowe received his injuries, appellant and said Rowe were engaged in interstate commerce and that this case is one covered by the Federal Employers' Liability Act and the amendments thereto (45 USCA §§ 51–59) and specially pleaded facts claimed to show the defense of contributory negligence and assumed risk, and further specially alleged:

"That in truth and in fact the injuries received by the deceased were occasioned by the conduct and actions of a party in no way connected with this defendant, and for whose conduct this defendant is not responsible, as will be fully developed on the trial of this case; * * *

"That the accident in this case was occasioned solely and only by the wild and reckless conduct of the driver of an automobile on the crossing in question, as will be fully and completely developed on the trial hereof."

As a background for the legal issues discussed, we here state so much of the evidence as illustrates the immediate facts surrounding the accident, and particularly some of the facts which it is claimed raise the issue that the act of Willis Hill was the sole cause of the accident. Since we regard the testimony as ample, if believed, to show negligence on the part of the appellant, we will not consume space in its detailed reproduction.

Shortly prior to the accident, the regular passenger train from Fort Worth to Denver had just come into the station. A switch engine had just coupled with the pullman on said train and was slowly backing with same easterly toward Buchanan street. This street runs north and south just east of appellant's depot and is paved to a width of 49 feet. Street lights were at the intersection of this street on both the north and south sides of appellant's right of way and said lights were burning at the time. Deceased Rowe was on the footboard of the tender attached to said switch engine. Willis Hill was coming south on Buchanan street in an automobile. Some of the witnesses place his speed at 25 or 30 miles an hour as he crossed the Rock Island tracks located about 260 feet north of the place of the accident. The engineer on the switch engine placed his speed at 25 to 40 miles an hour just before the collision. Williamson, flagman for appellant, whose duties were to watch the crossing and give signals of any danger, testified, in part, that he was on duty; that he saw Hill approaching; that he waved his lantern at him; that Hill came right on and that he had to dodge out of his way to keep from being struck and that Hill

swerved to his right and struck the tender near the point where Rowe was located and which at the time appears to have been just at the western edge of Buchanan street. That he holloed at Hill. Other witnesses saw Rowe swinging his lantern just before the accident, and one witness testified that Hill's car, after the accident, was standing at an angle of about 45° with the rear wheels about 4 feet west off the west edge of the paving on Buchanan street. The deceased Rowe made this statement, after the accident: "It is pretty tough luck to have both of my legs broke, but if he had not, this party driving the automobile, drove around off the pavement and struck me, he would have killed old Jessie, that is, the crossing flagman." His statement to the flagman was: "He told me that I was not responsible for it. I was at my place of duty and he did not hold me responsible for nothing." It further appears that the automatic bell was ringing at the time and that the whistle had blown for the crossing and that the lights of the engine were on and that it was going very slowly, perhaps some 4 or 5 miles an hour.

The case was submitted upon special issues, and all of these being answered favorably to the appellee, judgment was rendered by the trial court against appellant for the gross sum of $17,000.

It is obvious from the above that the major controversy between the parties in the lower court centered around the issue of who proximately caused the injury to deceased Rowe. Here we have the same controversy, arising out of the alleged failure of the trial court to properly submit this important issue to the jury. This was the most vital fact issue in the trial court, and out of it arises the major legal issue for our determination.

In disposing of it, no useful purpose can be served by quoting and replying seriatim to the respective contentions of the parties to this appeal, contained in lengthy original and reply briefs. Rather we think a general statement of the law of this case will sufficiently answer these, without their tedious repetition.

Nor do we think it profitable to enter into any extended discussion of the legal meaning and precise application of the term "proximate cause," a phrase already clouded by evanescent reasoning and subtle distinctions. As has been said, and correctly we think: "Theorize as we may on the subject of proximate cause, it is in its last analysis a question of good common sense, to be solved by a practical consideration of the evidence in each particular case." Childs v. Standard Oil Co., 149 Minn. 166, 182 N. W. 1000, 1001. And as said in another case, it has always been found difficult when sought to be applied "to a state of facts presenting more than one contributing cause or act that resulted in the wrong or injury complained of." City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S. W. 212, 215, 35 L. R. A. (N. S.) 207.

All judicial minds will agree, we think, on the simple statement that one person may not be held liable for damages caused solely by the act of another over whom he has no control. This is only the statement of a self-evident truth, but to be judicially orthodox, we quote: "A master is not as a rule liable for injuries to his servant caused by the act or omissions of third persons over whom he has no control." 39 C. J. 291; Texarkana, etc., R. Co. v. La Velle (Tex. Civ. App.) 260 S. W. 248; Thompson v. Galveston, etc., R. Co., 48 Tex. Civ. App. 284, 106 S. W. 910. In the present case this vital issue was submitted only in the following language:

"Special Issue No. 5.

"(a) Was the failure of Willis Hill to avoid the collision between his automobile and the engine upon which James C. A. Rowe was riding on the occasion in question, negligence upon the part of said Hill? Answer Yes or No.

"(b) If so, was such negligence, if any, upon the part of said Hill the sole proximate cause of the injuries received by said Rowe on the occasion in question? Answer Yes or No."

The first subdivision was answered, "No," and the second, by the court's instruction presumably, was not answered by the jury. The language into which said issue No. 5 was cast, amounted, in practical effect, to a denial, in our opinion, of any submission of the real defense made by the pleading and proof in behalf of appellant to the effect that Willis Hill's act was the sole cause of the injury to Rowe. This we shall now attempt to demonstrate. It will be observed that only the issue of Hill's negligence was submitted and answered, and the controlling one of whether or not Hill's act was the sole cause of the injuries to deceased was only conditionally submitted and remained unanswered under the court's instruction. If Hill's act was wholly independent, that is, not set in motion by the alleged wrongful act of appellant, what difference could it make whether it was negligent, accidental, malicious, or even meritorious? Hill might have been negligent, but if his negligence merely concurred with that of appellant to produce the injury, the

company is still liable. However, it has been aptly stated: "The concurring negligence of another can not transform the remote into the proximate cause of injury, or create or increase liability therefor." 45 C. J. 923; Thubron v. Dravo Contracting Co., 238 Pa. 443, 86 A. 292, 44 L. R. A. (N. S.) 699, Ann. Cas. 1914C, 252. Obviously, an independent act of a third party may, but does not necessarily have to, be negligent, in order to be the sole cause of an injury and constitute a defense in cases of this character. It follows, therefore, that a charge which limits such a defense solely to negligent acts is ordinarily too restrictive, even if it submitted the further controlling issue of sole cause, which this one did not do. If a negligent act of the third party was the only one proven, the error would be harmless; but such is not the state of the present record, there being evidence raising the issue of accident. Hill was not a party to this suit. No recovery was sought against him, and it was not necessary to show a tenable cause of action against him, when his acts are relied on only as a defense. We quote: "It has been reasoned that the defense that an injury alleged to have been caused by the defendant's negligence was in fact caused by the interposition of an independent act of another, can not be interposed when that other acted neither maliciously nor negligently. But this is plainly an aberration. It is not at all necessary for the defendant, in the case where he is sued for an injury caused by the act of a third person, to give the plaintiff a tenable action against such third person. If the third person acted independently of the defendant, and if the action of the defendant did not induce his action, then it can make no difference with the rights of the defendant whether the action of the third person was wrongful or meritorious. It may have been such an act as would be ascribed to unavoidable accident, or misfortune, and yet, if it was an act independent of the act of the defendant, directly producing the harm which the plaintiff suffered, that necessarily ends the action of the plaintiff against the defendant." 1 Thompson on Negligence, 58, § 54. See, also, Cavanaugh v. Centerville Block Coal Co., 131 Iowa, 700, 109 N. W. 303, 7 L. R. A. (N. S.) 907; Paul v. Atlantic Coast Line R. Co., 170 N. C. 230, 87 S. E. 66, L. R. A. 1916B, 1079; Georgia Southern, etc., R. Co. v. Cartledge, 116 Ga. 164, 42 S. E. 405, 59 L. R. A. 118. There are a few authorities to the contrary, but their reasoning has been so universally rejected that we do not pause here to discuss or cite them. The quoted special issue predicated appellant's entire defense upon the presence or absence of negligence, when a finding upon this naked question could not be used as the basis of a judgment one way or the other.

We turn now to a consideration in a general way of what should have been submitted on this particular phase of the case as a defense under the issue made by the pleading and proof.

■■ In order to recover the appellee had the burden not only of proving negligence, but that such negligence was the proximate cause of the injury. If the flow of events set in motion by the alleged negligent act of appellant was broken by "any new or independent cause," there could be no recovery, because then proof of "proximate cause" fails. The failure of appellant's flagman to signal Hill is the act which is alleged to have started a sequence of events which eventuated in the injury of Rowe. By such failure appellant impliedly invited Hill upon the crossing, and is legally responsible for the consequences, though Hill's act caused the injury to deceased Rowe. But on the other hand, suppose Hill failed to look and listen, or having done so, failed to heed a warning given (assuming such was given), or knowing of the presence of the engine, but believing he could beat it across, and in attempting to do so, swerved into it in trying to miss the flagman, and thus injured Rowe, what causal connection is there under any of these circumstances between the negligent act alleged against appellant and the act of Hill? How could it be said that the alleged negligent act of the flagman influenced Hill's conduct under any of the above recited facts? The existence of some, if not all these, was raised as an issue, and an affirmative finding upon any would break the causal connection between the negligent act pleaded and that of Hill, and would sufficiently establish a "new and independent cause," thus destroying "proximate cause" essential to a recovery by appellee. The appellant filed exceptions to special issue No. 5 calling attention in a most general way to some of its vices. We are impressed with the view that but for the special issues requested, appellant would not be in position to complain of the submission of the particular defensive matter under discussion. It properly requested the following special issues:

"Defendant's Requested Issue No. 3.

"1. Do you find from a preponderance of the evidence that Willis Hill listened for the approaching engine and cars as he approached the crossing? Answer yes or no.

"If you answer the above question 'no' then answer:

"2. Do you find from a preponderance of the evidence that the failure on the part of the said Willis Hill to listen, if he did so fail, was not the sole direct cause of the accident involved? Answer yes or no."

"Defendant's Requested Issue No. 4.

"1. Do you find from a preponderance of the evidence in this case that the deceased Rowe warned Hill, the driver of the automobile, of the approaching locomotive and cars? Answer yes or no.

"If you have answered the above and foregoing question 'yes' then answer:

"2. Do you find from a preponderance of the evidence that the fact that the said Willis Hill swerved his car to the right was the sole cause of the injuries sustained by the deceased? Answer yes or no."

██ Any trial court with the present question before him is faced with the difficult task of submitting defensive issues in such way as that an answer may be made the basis of a judgment, and must distinguish between those which amount only to a finding of concurrent negligence, and those which establish an independent act; that is, one which is unrelated to the alleged negligence of defendant. The former is no defense, while the latter is completely so. In all fairness we are compelled to say that the trial court in the present case did not have pointed out to him by specific exceptions the real trouble with his charge, but taking the record as a whole, we think it sufficiently appears that appellant apprised him of a failure to submit its real defense, and requested the submission of special issues which, if given and answered, could have been made the basis of a judgment. We find nothing to justify any claim that he was lead into such error by appellant. As pointed out above, the burden was upon appellee to prove (1) negligence on the part of appellant and (2) that such negligence proximately caused Rowe's injury. Proof of a "new and independent cause" of such injury destroyed the second of these indispensable requisites of recovery, and was admissible under a general denial. This, we think, is too obvious to require citation of authority.

Having made proof of facts which, if believed, destroyed plaintiff's case, appellant was entitled to have the existence of same pertinently and affirmatively submitted to the jury, though same were not specifically mentioned in its pleading. In addition to a general denial, it will be noted that appellant did plead generally that another's act caused the alleged injury. There apparently was no exception to this pleading because of its general character. That such is the right of a defendant under such pleading is, we think, well settled. Colorado & S. Ry. Co. v. Rowe (Tex. Com. App.) 238 S. W. 908; Gulf, C. & S. F. Ry. Co. v. Mangham, 95 Tex. 413, 67 S. W. 765; American Employers' Ins. Co. v. Singleton (Tex. Com. App.) 24 S.W.(2d) 26; Spears Dairy v. Bohrer (Tex. Civ. App.) 54 S. W.(2d) 872.

Since this case must be reversed and remanded, we now advert to certain other contentions of appellant in view of another trial.

█ After giving a definition of "assumed risk," the correctness of which is under vigorous attack here, the trial court then submitted the following special issues:

"Special Issue No. 4.

"(a) Did the injuries sustained by James C. A. Rowe on the occasion in question, arise from risks of danger ordinarily incident to the employment in which he was engaged?

"(b) Did James C. A. Rowe assume the risk, if any, growing out of the negligence, if any, of the flagman, inquired about in Issue No. 1 (b)?"

Said subdivision (b) is particularly attacked in appellant's brief, and we think correctly so, because it fails to submit affirmatively the existence of any fact or group of facts which if found favorably to appellant would establish the defense of assumed risk. In other words, the same error already discussed is found in the submission of the defense of assumed risk. A charge in much the same language was condemned by Judge Boyce in the case of Ft. Worth & D. C. Ry. Co. v. Morrow (Tex. Civ. App.) 235 S. W. 664 (writ refused). Other cases whose reasoning illustrates the error in this charge are the following: Texas & P. Ry. Co. v. Perkins (Tex. Com. App.) 48 S.W.(2d) 249; Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647; Ft. Worth & D. C. Ry. Co. v. Hawley (Tex. Civ. App.) 235 S. W. 659.

We see no necessity for the use of the phrase "assumed risk," and unless it is used, there is obviously no necessity for its definition. In submitting the defense of contributory negligence, the court neither used nor defined such term. By submitting a charge on another trial in accordance with the above holding, practically all the specific objections made to this charge will be eliminated. Some of appellant's objections were sufficiently specific. All errors therein pointed out pass out of the case by a compliance of the trial court with the above suggestion. We

are more than doubtful whether or not the error first above discussed was properly pointed out to the trial court by appellant. It is objected that the entire issue submitting assumed risk was too general and in the abstract. We think the same objection applies to appellant's exception.

■ The defense of assumed risk and that of contributory negligence are so nearly alike that they have furnished the subject-matter of much debate among eminent judges. No special charge was asked by appellant to cure the error, nor do we think by any exception it properly apprised the court of the existence of any fact or group of facts claimed by it to raise such issue. The court therefore was forced without any help in either the pleading or exceptions of appellant, after hearing a great mass of evidence only one time, to go through and sift out and winnow the group of facts which raise contributory negligence and the group which raise the issue of assumed risk and properly state and submit same without having pointed out to him, except in the most general way, the precise defense desired. He did attempt to submit the issue, and having done so, he was entitled to have pointed out to him in a clear and specific manner the error in his charge. The statute requiring exceptions to the court's charge would become a meaningless thing unless the courts so interpret it as to compel a litigant to fully and intelligently point out any alleged error therein. We have been moved to consume space in the discussion of this particular matter because of the increasing frequency of records in this court in which errors in the court's charge are very plainly pointed out in the briefs, but vaguely and insufficiently so in the trial court. The purpose of the statute requiring exceptions was to assist, and not to snare, the court.

■ In the submission of special issues, the court followed all these by the following instruction:

"The burden is on the plaintiff to prove, by a preponderance of the evidence, that is, the greater degree and weight of credible testimony before you, the affirmative of Issue No. 1 (a), (b), (c), and (d), the amounts inquired about in Issues Nos. 2, 3 (a), (b), and (c), and the negative of Issues Nos. 5 (a) and (b), 7 and 8.

"The burden is on the defendant to prove, by a preponderance of the evidence, the affirmative of Issues Nos. 4 (a) and (b), 5 (c), 6 (a), (b) and (c) and the percentage, inquired about in Issue 6 (d)."

The appellant excepted to this in substance because it was a clear intimation from the court to the jury as to the effect of their findings, it being claimed that the jury could infer from such instruction for whom their verdict would be. Such a charge has been recently condemned by the Fort Worth Court of Civil Appeals in Texas & P. Ry. Co. v. Hancock, 59 S.W.(2d) 313. We are not prepared to agree that such a charge in all cases would present reversible error. Obviously if the court intimated or told the jury a fact already evident to them, its action would not be error. It seems to us that any juror with average intelligence would know that an affirmative answer to special issues Nos. 1, 2, and 3, and the subdivisions thereof, would be for the plaintiff; but this probably is not true as to the remainder of these. We are not willing to commit this court to the declaration that such a charge is in all cases and under all circumstances reversible error. We think plainly it may or may not be error according to the particular facts and circumstances of each case.

■ In the court's definition of "proximate cause," he used the expression "natural and continuous sequence." It is insisted that this last phrase should have been defined. We are not in agreement with the contention that having defined a legal term, the court should then in turn define his definition. It is insisted that some of the jurors might not understand the meaning of "sequence." This may be true, and the same might also apply to a great number of words used in the court's charge. The authorities are in hopeless conflict. However, we do not believe that such a phrase is a legal term, and it seems plain to us that there must be an end somewhere to defining words unless the special issue statute is to become a mockery.

For the error discussed, the judgment of the trial court is reversed and the cause remanded.